1  SPENCER P. HUGRET (SBN 240424)
   shugret@grsm.com
2  ROBERT C. RODRIGUEZ (SBN 224254)
   rrodriguez@grsm.com
3  GORDON REES SCULLY MANSUKHANI LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA 94111
5  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054

6
7  Attorneys for Defendants
   FORD MOTOR COMPANY and
   VINCE DIXON FORD, INC., dba
8  KEN GRODY FORD CARLSBAD

9

10           **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12
   FRANK CECIL HUGHES,                  Case No.  **'18 CV 0385 CAB WVG**
13
                    Plaintiff,          **DEFENDANTS' NOTICE OF**
14                                       **REMOVAL**
        vs.
15
   FORD MOTOR COMPANY, a Delaware
16 Corporation; VINCE DIXON FORD,       Sup Ct Complaint: December 19, 2017
   INC., a California Corporation, dba KEN
17 GRODY FORD CARLSBAD; and DOES
   1 through 10, inclusive,
18
                    Defendants.
19

20                 **NOTICE OF REMOVAL**

21 TO THE CLERK OF THE ABOVE-ENTITLED COURT:

22        PLEASE TAKE NOTICE that Defendants Ford Motor Company ("Ford") and

23 Vince Dixon Ford, Inc., a California Corporation dba Ken Grody Ford Carlsbad

24 ("Ken Grody Ford"), by their counsel GORDON REES SCULLY MANSUKHANI

25 LLP, hereby remove to this court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

26 based on diversity of citizenship, the claims pending as Case No. 37-2017-00049189-

27 CU-BC-CTL of the Superior Court of California, County of San Diego. In support of

28 this removal, Defendants state as follows:

*Gordon Rees Scully Mansukhani, LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

## I.    THE REMOVED CASE

1. The removed case is a civil action commenced in the Superior Court of California, County of San Diego by Plaintiff Frank C. Hughes against Ford and Ken Grody Ford, entitled *Hughes v. Ford Motor Company, et al.*, Case No. 37-2017-00049189-CU-BC-CTL (the "State Action").  The two named Defendants are Ford Motor Company and Ken Grody Ford.  Ford is defending and indemnifying Ken Grody Ford in this matter.

2. Plaintiff filed the State Action on December 19, 2017, asserting breach of warranty and fraudulent inducement claims against Ford, and breach of the implied warranty of merchantability against Ken Grody Ford.  *See* Complaint.

## II.    PROCEDURAL REQUIREMENTS

3. Ford and Ken Grody Ford have thirty (30) days from the date of service or receipt of a copy of the Complaint to remove a case.  28 U.S.C. § 1446(b).  Defendant Ford Motor Company was served with a copy of the Complaint on January 18, 2018 (Ken Grody Ford has not yet been served with a copy of the Complaint).  This Notice of Removal is therefore timely filed.

4. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders for the State Action in Ford's possession are contained in **Exhibits A-C** filed herewith.

5. Pursuant to 28 U.S.C. § 1446(a), venue is proper in the Southern District of California because this district embraces the place in which the removed action has been pending.

6. Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be filed with the Superior Court of California, County of San Diego promptly after filing of same in this Court.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

7. Pursuant to 28 U.S.C. § 1446(d), written notice of filing of this Notice of Removal will be given to all adverse parties promptly after the filing of same in this Court.

8. If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to conduct discovery, brief any disputed issues and to present oral argument in favor of their position that this case is properly removable.

9. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendant's right to assert defenses including, without limitation, the defenses of (i) lack of jurisdiction over person, (ii) improper venue and/or *forum non conveniens*, (iii) insufficiency of process, (iv) insufficiency of service of process, (v) improper joinder of claims and/or parties, (vi) failure to state a claim, (vii) failure to join indispensable party(ies), or (viii) any other procedural or substantive defense available under state or federal law.

### III.    THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET

10. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

11. The removing party's initial burden is to "file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a)" which requires only that the grounds for removal be stated in a "short and plain statement." *Dart*, 135 S. Ct. at 553.

12. Generally, a federal district court will first "consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (internal citation

omitted).  But a defendant may remove a suit to federal court notwithstanding the failure of the plaintiff to plead the required amount.  Absent the facial showing from the complaint, the court may consider facts averred in the removal petition.  *Id.*  Next, if the defendant's allegation(s) regarding the amount in controversy is challenged, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra*, 775 F.3d at 1195.  At that time, "it may be appropriate to allow discovery relevant to [the] jurisdictional amount prior to remanding."  *Abrego*, 443 F.3d at 691 (internal citation omitted).

13.  Defendants dispute they are liable for any damages whatsoever to Plaintiff. Nevertheless, Defendants can demonstrate that the amount in controversy exceeds $75,000 under the "preponderance of the evidence" standard.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  The standard requires only that the removing parties present evidence that "it is more likely than not" that the amount in controversy is satisfied.  *Id.*

14.  In the case at bar, the Plaintiff seeks both monetary and injunctive relief. This is a products liability and breach of warranty case.  Plaintiff alleges breach of express and implied warranties under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*), fraudulent inducement, negligent repair, and violation of the California Consumer Legal Remedies Act (Compl. ¶¶ 110-181).[1]

15.  Plaintiff alleges that on February 4, 2012 he purchased a new 2012 Ford Focus for $24,530.98[2] and that the Powershift transmission is defective because it "consistently slips, bucks, kicks, jerks, harshly engages," among other alleged problems.  (Compl. ¶¶ 9, 22).  Plaintiff further alleges he took the Focus in for

---

[1] Plaintiff alleges only breach of the Implied Warranty of Merchantability under Civil Code section 1792 against Defendant Ken Grody Ford (Compl. ¶¶ 125–136), which, as stated, Ford has agreed to defend and indemnify.

[2] The calculation of vehicle price is made by adding the "Down Payment" and "Total of Payments," as represented in the Plaintiff's Sale Contract.  *See* Declaration of Robert C. Rodriguez ("Rodriguez Decl."), filed concurrently herewith.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

multiple repairs between March 1, 2012 and March 30, 2016, and that the "Powershift Transmission could not be repaired." (Compl. ¶¶ 73–78, 86).

16. Plaintiff further alleges he is entitled to relief under the Song-Beverly Act including: attorney's fees, restitution, reimbursement of the price paid for the vehicle, costs, expenses, all incidental, consequential, and general damages, as well as a civil penalty of up to two times the amount of actual damages. (Compl. ¶¶ 121–124). Plaintiff also seeks "rescission of the [purchase] contract" under the Song-Beverly Act (*Id.* ¶134). Lastly, Plaintiff seeks punitive damages. (*Id.* Prayer for Relief).

17. The amount in controversy calculation includes punitive damages. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Civil penalties under the Song-Beverly Act are also properly included in the calculation. *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002). So too are reasonable estimates of attorney's fees. *Id.* at 1011.

18. The Song-Beverly Act allows for the recovery of attorney's fees, which regularly exceed $100,000.00. (Declaration of Spencer Hugret ("Hugret Decl."), ¶¶ 5-6, filed concurrently herewith).

19. If Plaintiff were to prevail on his Song-Beverly claims, he could be awarded damages of $73,592.94 or more if awarded statutory civil penalties. As such, even *before* taking punitive damages or attorney fees into account, the amount in controversy already exceeds $73,500, which includes just the purchase price plus a 2X civil penalty pursuant to the Song-Beverly Act.

20. Thus, the total amount in controversy exceeds $73,500.00, even *before* adding Plaintiff's claim for punitive damages *or* attorney fees. Accordingly, the amount in controversy is easily satisfied in this case. (Rodriguez Decl. ¶ 6; Cal. Civ. Code § 1793.2(d)(2)(B)-(C); § 1794(c)).

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

# IV.   DIVERSITY OF CITIZENSHIP EXISTS

21.  Plaintiff is and was at the time of filing of the Complaint, both a citizen and resident of California.  (Compl. ¶ 2).

22.  Ford is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Michigan.  This Court can take judicial notice of these facts.  *See* Excerpt from Ford's 2017 Form 10-K filing, Exhibit B to Rodriguez Decl.; *see also* Fed. R. Evid. 201(b)(2) (courts may judicially notice facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

## A.   Defendant Ken Grody Ford and Fraudulent Joinder

23.  As indicated, Ken Grody Ford is a California corporation. Defendants contend that Plaintiff fraudulently joined Ken Grody Ford in this products liability case for no reason other than to defeat diversity jurisdiction and prevent removal of the action to federal court.  *See In re Briscoe*, 448 F. 3d 201, 217 (3d Cir. 2006) ("[fraudulent joinder exists where] there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment.").  Here, Plaintiff has sued Ken Grody Ford for *only* "implied warranty of merchantability ("IWOM")," and it is clear from the Complaint that this is a products liability and breach of warranty case against Ford Motor Company only.  Ford believes Plaintiff has no intention of prosecuting the IWOM claim against Ken Grody Ford [3], and that in fact the IWOM claim was only brought to defeat the claim of diversity and removal to Federal Court, due to the fact that there is now an MDL within the federal court.  (Hugret Decl. at ¶7). Indeed, Ford's counsel's vast litigation experience in opposing automotive product liability cases (and in particular matters filed by Mr. Mikhov's firm), has been that individual Ford dealerships have *not* been regularly sued. (*Id.*)  Because Plaintiff's joinder of Ken Grody Ford is fraudulent, this Court

---

[3] Indeed, a review of the Complaint's allegations regarding Ken Grody Ford shows that they are nothing more than bare-boned, non-specific allegations of duty and breach.

DEFENDANTS' NOTICE OF REMOVAL

1  has the jurisdiction to accept this matter, as absent Ken Grody Ford, complete

2  diversity exists for purposes of 28 U.S.C. § 1332 jurisdiction.

3       B.    Ken Grody Ford is a dispensable party pursuant to FRCP Rule 21 and
            may be severed from the action
4

5  24.   Alternatively, as Ken Grody Ford is a nondiverse dispensable party pursuant

6  to Federal Rules of Civil Procedure ("FRCP") Rule 21, this Court may sever the

7  claim against Ken Grody Ford, allowing the remainder of the case to properly remain

8  in federal court.  Pursuant to FRCP Rule 21, a court "may at any time, on just terms,

9  add or drop a party.  The court may also sever any claim against a party," in order to

10 preserve federal jurisdiction.  *See Newman-Green, Inc. v. Alfonzo-Larrain* 490 U.S.

11 826, 832 (1989) ("it is well settled that Rule 21 invests district courts with authority

12 to allow a dispensable nondiverse party to be dropped at any time, even after

13 judgment has been rendered.")  Here, we have a products liability and breach of

14 warranty action and complaint against Ford, and one simple IWOM claim again a

15 Ford selling dealership.  As such, the products liability, warranty, and fraud claims

16 against Ford have a very distinct factual basis than the IWOM claim against Ken

17 Grody Ford.  Similar to these facts is that of a plaintiff suing a manufacturer of a

18 medical device or product under products liability theories, while also suing the

19 physicians and healthcare professionals who used the product during the plaintiff's

20 surgery, for medical malpractice, in order to defeat diversity.  This was in fact the

21 scenario in *Mayfield v. London Women's Care,* PLLC 2015 WL 3440492 (E.D. Ky.

22 May 28, 2015), where the federal court severed the medical malpractice claim,

23 holding the plaintiffs would be able to obtain relief in state court.  In its opinion, the

24 *Mayfield* court cited to the U.S. Supreme Court Case of *Temple v. Synthes Corp*. 498

25 U.S. 5,7 (1990) (finding the doctor who performed an implant surgery was not a

26 necessary party in a products liability action against the manufacturer of the

27 implanted medical device.)  Similarly here, the salesmen and service technicians at

28 Ken Grody Ford who came in contact with Plaintiff's Ford Focus have nothing to do

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

with the design or the manufacture of the vehicle or its counterparts.  Furthermore, Plaintiff will be able to protect his interests as related to Ken Grody Ford in state court, and not expose Ford to double or inconsistent obligations.  Simply stated, the claims against Ford are too distinct from the simple IWOM action against Ken Grody Ford to not sever the dealership from the federal action.

25. For the reasons stated above, there is diversity of citizenship between Plaintiff, a California citizen, and Ford, a citizen of Michigan and Delaware.  While Defendant Ken Grody Ford is a California citizen, the Court should have subject matter jurisdiction over this dispute under 28 U.S.C. § 1332, as Ken Grody Ford was fraudulently joined by Plaintiff.  Alternatively, the court may sever defendant Ken Grody Ford and the claims against it, as a dispensable and nondiverse party pursuant to FRCP 21.

## **CONCLUSION**

26.  Consequently, the State Action may be removed to this Court by Defendants in accordance with the provisions of 28 U.S.C. § 1441 because: (i) this action is a civil action pending within the jurisdiction of the United States District Court for the Southern District of California, (ii) the action is between citizens of different states, and (iii) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Dated:   February 20, 2018        GORDON REES SCULLY MANSUKHANI LLP

By:   /s/ Spencer P. Hugret
      Spencer P. Hugret
      Robert C. Rodriguez
      Attorneys for Defendants
      FORD MOTOR COMPANY and
      VINCE DIXON FORD, INC., dba
      KEN GRODY FORD CARLSBAD

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/19/2017** at 12:37:45 PM
Clerk of the Superior Court
By Erika Engel, Deputy Clerk

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
FRANK CECIL HUGHES

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF SAN DIEGO

| | |
|---|---|
| FRANK CECIL HUGHES,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, a Delaware Corporation; VINCE DIXON FORD, INC., a California Corporation, dba KEN GRODY FORD CARLSBAD; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 37-2017-00049189-CU-BC-CTL<br><br>Unlimited Jurisdiction<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF EXPRESS WARRANTY – VIOLATION OF SONG-BEVERLY ACT**<br>2. **BREACH OF IMPLIED WARRANTY – VIOLATION OF SONG-BEVERLY ACT**<br>3. **FRAUDULENT INDUCEMENT – CONCEALMENT**<br>4. **FRAUDULENT INDUCEMENT – INTENTIONAL MISREPRESENTATION**<br>5. **FRADULENT INDUCEMENT – NEGLIGENT MISREPRESENTATION**<br>6. **VIOLATION OF CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.)**<br><br>*Assigned for All Purposes to the Honorable*<br><br>Department |

1         Plaintiff, FRANK CECIL HUGHES, alleges as follows against Defendant, FORD MOTOR

2    COMPANY, a Delaware Corporation (hereinafter "Ford"); VINCE DIXON FORD, INC., a

3    California Corporation, dba KEN GRODY FORD CARLSBAD ("Ken Grody Ford"); and DOES 1

4    through 10 inclusive, on information and belief, formed after an inquiry reasonable under the

5    circumstances:

6    <center>**DEMAND FOR JURY TRIAL**</center>

7    1.    Plaintiff FRANK CECIL HUGHES hereby demands trial by jury in this action.

8    <center>**GENERAL ALLEGATIONS**</center>

9    2.    Plaintiff, Frank Cecil Hughes, is an individual residing in the City of Fallbrook, County

10    of San Diego, and State of California.

11    3.    Defendant Ford Motor Company is and was a Delaware Corporation registered to do

12    business in the State of California with its registered office in the City of Los Angeles, County of

13    Los Angeles, and State of California.

14    4.    Defendant Ken Grody Ford is and at all relevant times was a California Corporation

15    registered to do business in the State of California, with its principal place of business in the City

16    of Carlsbad, County of San Diego, and State of California, and its registered agent for service of

17    process in the City of Buena Park, County of Orange, and State of California.

18    5.    This cause of action arises out of the warranty obligations of Ford Motor Company for a

19    vehicle purchased by Plaintiff and for which Ford Motor Company issued a written warranty.

20    Plaintiff also alleges that Ford concealed a known defect from Plaintiff. The defective component

21    is called the DPS6 PowerShift Transmission ("PowerShift Transmission").    The PowerShift

22    Transmission is an "automated manual" transmission used by Ford in their 2011-2013 Ford Fiesta

23    vehicles and 2012-2014 Ford Focus vehicles. Ford also misrepresented to Plaintiff the type of

24    transmission the PowerShift Transmission is/was.

25    6.    Plaintiff does not know the true names and capacities, whether corporate, partnership,

26    associate, individual or otherwise of Defendant issued herein as Does 1 through 10, inclusive,

27    under the provisions of section 474 of the California Code of Civil Procedure.    Defendant Does 1

28    through 10, inclusive, are in some manner responsible for the acts, occurrences and transactions set

<center>-2-</center>
<center>Hughes v. Ford - COMPLAINT</center>

1  forth herein, and are legally liable to Plaintiff. Plaintiff will seek leave to amend this Complaint to
2  set forth the true names and capacities of the fictitiously named Defendant, together with
3  appropriate charging allegations, when ascertained.

4      7.   All acts of corporate employees as alleged were authorized or ratified by an officer,
5  director or managing agent of the corporate employer.

6      8.   Each Defendant whether actually or fictitiously named herein, was the principal, agent
7  (actual or ostensible), or employee of each other Defendant and in acting as such principal or
8  within the course and scope of such employment or agency, took some part in the acts and
9  omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief
10  prayed for herein.

11      9.   On February 4, 2012, Plaintiff purchased a new 2012 Ford Focus, VIN:
12  1FAHP3N21CL279414, (hereinafter "the Vehicle" or "Subject Vehicle"), and express warranties
13  accompanied the sale of the vehicle to Plaintiff by which Ford Motor Company undertook to
14  preserve or maintain the utility or performance of Plaintiff's vehicle or provide compensation if
15  there was a failure in such utility or performance. The sales contract is attached and incorporated
16  by its reference as Exhibit 1.

17      10.   The vehicle was delivered to Plaintiff with serious defects and nonconformities to
18  warranty and developed other serious defects and nonconformities to warranty including, but not
19  limited to a transmission.

20      11.   Plaintiff hereby revokes acceptance of the sales contract.

21      12.   Plaintiff hereby demands trial by jury in this action.

22                          **The DPS6 PowerShift Transmission Defect**

23      13.   The Vehicle was manufactured by Ford and delivered to Plaintiff with a PowerShift
24  Transmission.  Ford offered the PowerShift Transmission as the sole "automatic transmission"
25  option in the Subject Vehicle.

26      14.   The PowerShift Transmission is neither a traditional manual transmission, nor a typical
27  automatic transmission, but is a computerized "automated manual" transmission.

28  ///

15.    Traditional manual transmissions use a driver-controlled clutch.  By pressing and releasing a foot pedal, the driver causes the clutch to mechanically engage and disengage the engine from the transmission, allowing the vehicle to travel continuously while the driver manually changes gears. Because a clutch allows for transfer of virtually all of the engine's power to the transmission, a properly designed and operating manual transmission is highly efficient. However, operation of a manual transmission can be difficult for less experienced drivers, and can result in the vehicle jerking or shuddering during improper operation, manual transmissions are disfavored by some consumers.

16.    In contrast, typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter.  The torque converter substitutes for the manual transmission's clutch, transmitting power from the engine to the transmission through a fluid medium.

17.    While automatic transmissions offer increased comfort and convenience, they are generally less fuel efficient and slower-shifting than manual transmissions because the torque converter transfers power through fluid less efficiently than a mechanical clutch.

18.    Ford marketed and sold its PowerShift Transmission as an automatic transmission that offered the "best of both worlds" combining a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.

19.    Ford's PowerShift Transmission, while sometimes referred to as an automatic, is actually a set of computerized manual transmissions. It lacks a torque converter, instead using two clutches to mechanically engage and disengage the engine and transmission.  Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

20.    Ford designed the PowerShift Transmission in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, convenience, and efficiency.  Ford designed and marketed its PowerShift Transmission as a more advanced and fuel efficient automatic transmission.  According to Ford's press release dated March 10, 2010, "PowerShift

-4-

1   with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear
2   shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with
3   low-friction gear lubricant for the life of the vehicle.   The transmission requires no regular
4   maintenance."

5   21.   In theory, a computer-controlled, automated manual transmission may provide the
6   convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of
7   a manual transmission.   In practice, however, Ford's PowerShift Transmission is plagued by
8   numerous problems and safety concerns.

9   22.   Plaintiff is informed and believe, and based thereon allege, that the PowerShift
10  Transmission is defective in its design and/or manufacture in that, among other problems, the
11  transmission consistently slips, bucks, kicks, jerks, harshly engages, has premature internal wear,
12  sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, and,
13  eventually, premature transmission failure (the "Transmission Defect").

14  23.   The Transmission Defect causes unsafe conditions in vehicles equipped with the
15  PowerShift Transmission, including, but not limited to suddenly lurching forward, delayed
16  acceleration, and sudden loss of forward propulsion.   These conditions present a safety hazard
17  because they severely affect the driver's ability to control the car's speed, acceleration, and
18  deceleration.   For example, these conditions make it difficult to safely merge into traffic.   Even
19  more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate,
20  but instead continue to transfer power to the transmission and even surge the engine's RPMs, when
21  the brakes are depressed.   As a result, drivers of vehicles equipped with the PowerShift
22  Transmission have reported their vehicles lurching forward into intersections at red lights due to
23  the failure of their braking efforts to stop the car.

24  24.   On information and belief, the Transmission Defect also causes premature wear to the
25  PowerShift Transmission's clutch plates and other components, which results in premature
26  transmission failure and requires expensive repairs, including premature transmission replacement.

27  25.   As early as 2010, Ford knew or should have known that the PowerShift Transmission
28  contained one or more design and/or manufacturing defects that negatively affect drivability and

1 | cause safety hazards.

2 |    26.  Plaintiff is informed and believe, and based thereon allege, that prior to sale of the
3 | Vehicle, Ford knew, or should have known, about the Transmission Defect through its exclusive
4 | knowledge of non-public, internal data about the Transmission Defect, including: pre-releasing
5 | testing data; early consumer complaints about the Transmission Defect to Ford's dealers who are
6 | Ford's agents for vehicle repairs; dealership repair orders; testing conducted in response to those
7 | complaints; technical service bulletins ("TSBs") developed by Ford and communicated to its
8 | dealers and authorized repair facilities; the existence of substantially identical defects in
9 | substantially identical European and Australian model vehicles released prior to Ford's marketing
10 | and sale of the PowerShift Transmission domestically; and other internal sources of information
11 | possessed exclusively by Ford and its agents.  Nevertheless, Ford and its agents have actively
12 | concealed the Transmission Defect, and failed to disclose this defect to Plaintiff at the time of
13 | purchase of the Vehicle or thereafter.

14 |    27.  Before offering vehicles equipped with the PowerShift Transmission (which Ford
15 | internally refers to as the "DPS6 automatic transmission") in the United States, Ford offered
16 | substantially identical vehicles, equipped with a similar dual-clutch transmission, in Europe and
17 | Australia.  Although the domestic version of the transmission utilizes dry clutches as opposed to
18 | the European and Australian version's wet clutches, Ford acknowledges that the transmission
19 | offered for sale in the United States is "derivative" of the design from the European and Australian
20 | models.  European and Australian versions of the dual-clutch transmission suffered from similar
21 | defects known to Ford as alleged herein.

22 |    28.  In addition to obtaining years of feedback and testing from its European and Australian
23 | dual-clutch transmission, according to Ford, its team:

24 |       "logged approximately three years or 6,000 man-hours of computer
25 |       aided mathematical modeling, simulation and analysis of engine
      speeds, torque and clutch capacity in only 24 months real time to
26 |       prove the THF concept was production ready."

27 |    29.  In addition, Ford boasted about its extensive testing of the vehicle in its marketing
28 | brochures that were publicly distributed:

Hughes v. Ford - COMPLAINT

> "Obsessive was the starting point. You'll enjoy every drive because Focus engineers obsessed over every last detail. Focus was thoroughly tested in an assortment of harsh environments and situations to make sure you get a car beyond your wildest imagination."

30. The PowerShift Transmission uses a program called Torque Hole Filling ("THF"), which is a combination of computer algorithms and computer aided tools to fill the torque hole, or what is more commonly perceived as a hesitation, while shifting. Ford claimed its THF technology would create a smoother driving experience for the customer to promote sales.

31. Despite these claims, consumers have not experienced a smoother driving experience from THF or any other technology incorporated in the PowerShift Transmission. Multiple reviews in automotive journals and customer complaints have documented and confirmed that the PowerShift Transmission has continuously exhibited the defects, malfunctions, maladjustments, and nonconformities that the Plaintiff now complains of.

32. In a 2011 *New York Times* review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift Dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

33. In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same *New York Times* article that "[i]t is quite a challenge to deliver something that is very, very fuel efficient and yet feels like a conventional automatic, and there are some balances and some trade-offs that we make."

34. In response to complaints about the Transmission Defect, in 2010 and 2011, Ford issued several Technical Service Bulletins ("TSBs") to its dealers and authorized repair facilities acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers and service personnel of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or check engine light with transmission control module (CM) diagnostic trouble code..."

1    35.   Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with

2  the PowerShift Transmission, informs dealers and service personnel of problems with the

3  PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response

4  while driving."

5    36.   Ford's TSB from March 31, 2011 also covering the 2011 Ford Fiesta, informs dealers of

6  problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

7    37.   Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta.  These TSBs

8  addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse

9  when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent

10  engagement, noise during engagement..."

11    38.   Another Ford TSB released in September 2011 advised dealers to reprogram the

12  transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating

13  from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in

14  or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

15    39.   The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which informed

16  dealers and service personnel of transmission problems including: "RPM flare on deceleration

17  coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations

18  at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift..."

19    40.   In May of 2012, Ford issued a "Customer Satisfaction Program: Program Number

20  12B37." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience

21  rough or jerky automatic transmission shifts.  In addition, the vehicle may experience roll back

22  when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight

23  incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks

24  associated with these known problems.

25    41.   Because Ford will not notify the public that the transmission is defective, Plaintiff (as

26  well as members of the general public) is subjected to dangerous driving conditions that often

27  occur without warning.

28  ///

42. Ford knew about, and concealed, the Transmission Defect present in the Vehicle, along with the Transmission Defect's attendant dangerous safety and drivability problems, from Plaintiff at the time of sale, repair, and thereafter. In fact, instead of repairing the defects in the PowerShift Transmission, Ford either refused to acknowledge their existence, or performed superficial and ineffectual software upgrades that simply masked the symptoms of the Transmission Defect.

43. If Plaintiff knew about these defects at the time of sale, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it.

44. As a result of Plaintiff's reliance on Ford and its agent's omissions and/or misrepresentations, Plaintiff suffered an ascertainable loss of money, property, and value to the Vehicle. Additionally, as a result of the Transmission Defect, Plaintiff were harmed and suffered actual damages in that the Vehicle's transmission is substantially certain to fail before its expected useful life has run.

### Ford Had Exclusive Knowledge of the Transmission Defect

45. Ford had superior and exclusive knowledge of the Transmission Defect, and knew or should have known that the Transmission Defect was not known or reasonably discoverable by Plaintiff, before Plaintiff purchased the Vehicle.

46. Plaintiff is informed and believe and based thereon allege that before Plaintiff purchased the Vehicle, and since at least 2010, Ford knew about the Transmission Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the transmission defects to Ford and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Ford dealers, among other internal sources of aggregate information about the problem including, but not limited to, similar defects in the substantially identical European and Australian models.

47. Before the Vehicle was available for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged in its own press release that the transmission offered for sale in the United States is a "derivative" of the design of the European and Australian models. European

1  and Australian versions of the dual-clutch transmission suffered from similar defects as alleged
2  herein.

3  48.  In addition to having access to years of analysis and feedback concerning the prior dual-
4  clutch design, Ford also acknowledged in its own press releases the extensive pre-release testing
5  and computer aided modeling, simulation, and analysis it conducted before bringing the
6  PowerShift Transmission to the United States market.

7  49.  Ford was also aware of the Transmission Defect through the numerous complaints it
8  received, both from consumers and from automotive journalists, who roundly criticized the
9  performance of the PowerShift Transmission.  Indeed, a July 15, 2011 *New York Times* review of
10  the Ford Focus criticized the PowerShift Transmission's "jerks, pauses and lethargic acceleration."
11  In that same article, Greg Burgess, a Ford engineer, admitted that Ford made "tradeoffs" in terms
12  of drivability in order to "deliver something that is very, very fuel efficient."

13  50.  The review went on to state: "the logical explanation is that they [the Ford Engineers]
14  were given a fuel economy target and no option but to meet it.  One might wonder why a top
15  executive didn't step in to keep the transmission from reaching market."

16  51.  The existence of the Transmission Defect is a material fact that a reasonable consumer
17  would consider when deciding whether to purchase or lease a vehicle equipped with a PowerShift
18  Transmission.  Had Plaintiff known that the Vehicle was equipped with a defective transmission,
19  they would not have purchased the Vehicle equipped with the PowerShift Transmission or would
20  have paid substantially less for it.

21  52.  Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is
22  safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiff
23  further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such
24  as the Transmission Defect, and will disclose any such defects to its consumers when it learns of
25  them.  They did not expect Ford to fail to disclose the Transmission Defect to him and to
26  continually deny the defect.

27  ///

28  ///

**Ford's Failure to Disclose the PowerShift Transmission Defect**

53. Ford has never disclosed the PowerShift Transmission defect to Plaintiff prior to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle, and Ford has never instructed its dealerships to disclose the PowerShift Transmission defect to drivers or potential purchasers or lessees of vehicles equipped with the PowerShift Transmission.

54. The PowerShift Transmission defect was not known or reasonably discoverable by the Plaintiff before purchase or lease, or without experiencing the defect first hand and exposing himself to an unreasonable safety risk.

55. Ford has remained silent even as it issued service bulletins, conducted internal investigations, and witnessed the failure of the transmission in earlier models of their vehicles distributed in Europe and Australia.

56. Ford's refusal to publically acknowledge the defect has created widespread confusion. Ford's failure to notify consumers, dealerships, or auto-technicians prevents the PowerShift Transmission problem from being efficiently diagnosed. Drivers are led to believe that the problems they are experiencing with the transmission in their vehicle are actually "normal characteristics" of the transmission. Likewise, the lack of information makes it less likely that dealerships and auto-technicians will be able to diagnose and fix the PowerShift Transmission defect, or advise Plaintiff about the dangers of driving the Subject Vehicle.

57. As a result of Ford's inaction and silence, Plaintiff was entirely unaware that Plaintiff purchased, and continues to drive, an unsafe and unreliable vehicle. As Ford knows, a reasonable person would consider the PowerShift Transmission defect important and would not purchase or lease a vehicle equipped with the PowerShift Transmission defect were the defect disclosed in advance, or would pay substantially less for the vehicle.

**Ford Has Actively Concealed the Transmission Defect**

58. While Ford has been fully aware of the Transmission Defect affecting the Vehicle, Ford and its agents actively concealed the existence and nature of the Transmission Defect from Plaintiff at the time of purchase, repair, and thereafter. Specifically, Ford failed to disclose or actively concealed, at and after the time of purchase or repair:

-11-

a. any and all known material defects or material nonconformity of the Vehicle, including the defects relating to the PowerShift Transmission;

b. that the Subject Vehicles, including their PowerShift Transmission, were not in good working order, were defective, and were not fit for the intended purposes; and

c. that Subject Vehicles and their PowerShift Transmission were defective, despite the fact that Ford learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2010.

59.   As a result of the Transmission Defect, Ford was inundated with complaints regarding the PowerShift Transmission. In July 2011, Ford implemented a communications strategy intended to enlighten consumers about some of the behavior characteristics of the PowerShift Transmission in order to "improve customer expectations." In a memo with instructions sent to Ford dealers and service personnel, which Ford intended its dealers and service personnel to communicate to consumers, Ford noted that some of the common and normal characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine.

60.   However, despite Ford's public insistence that these behavioral characteristics of the PowerShift Transmission were normal, in 2010 and 2011, Ford issued several TSBs to its dealers in the United States acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers how to address and attempt to repair the PowerShift Transmission in response to "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

61.   Ford's TSB released on January 1, 2011, covering the 2011 Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

62.   Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

63. Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement…"

64. On information and belief, another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop.".

65. The 2012 Ford Focus was the subject of a Ford TSB in September 2011, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

66. In December of 2011, *Motor Trend* magazine called these efforts by Ford a "stealth upgrade" and noted that while "[t]here's no official recall or service campaign… anybody who complains or requests an upgrade at the dealership can have their powertrain control computer re-flashed."

67. On information and belief, the software upgrades recommended and encouraged by the various TSBs issued by Ford were completely ineffective at addressing the Transmission Defect.

68. When consumers present vehicles equipped with the PowerShift Transmission to an authorized Ford dealer for repair to the transmission, rather than inform consumers of the Transmission Defect or conclusively repair the problem under warranty, Ford's dealers and authorized repair facilities either inform consumers that their vehicles are functioning properly, or perform superficial and ineffectual software updates that delay or mask the manifestation of the Transmission Defect in an attempt to avoid more comprehensive and expensive repairs or replacements under the warranty.

69. To this day, Ford still has not notified Plaintiff that the Vehicle suffers from a systemic defect that causes the transmission to malfunction.

///

1

## PLAINTIFF'S EXPERIENCES

2     70.   The Vehicle was equipped with a DPS6 Ford PowerShift Transmission.

3     71.   On or about February 4, 2012, Plaintiff visited Ken Grody Ford in Carlsbad, California in
4 hopes of purchasing a new Ford Focus vehicle. Plaintiff walked the dealership in search of a
5 vehicle to meet Plaintiff's needs, assisted by a salesperson. Plaintiff was specifically searching for
6 a Ford Focus vehicle with an automatic transmission for a smoother and more effortless drive. In
7 searching the car inventory on the car lot, Plaintiff reviewed the window stickers of multiple Ford
8 Focus vehicles that caught his eye.  The window stickers on these vehicles identified them as
9 having an automatic transmission. Plaintiff identified a 2012 Ford Focus he was interested in
10 purchasing.  Plaintiff's conversations with the salesperson, the window sticker on the vehicle, and
11 a test drive of the vehicle all reinforced Plaintiff's belief that the Vehicle was in fact equipped with
12 an automatic transmission.  The salesperson never disclosed to Plaintiff that the vehicle was not
13 actually equipped with an automatic transmission. Plaintiff relied on the statements on the window
14 sticker and marketing materials they had received about the Ford Focus.

15     72.   Prior to purchasing the Vehicle, Plaintiff reviewed marketing brochures, viewed
16 television commercials and/or heard radio commercials about the qualities of the Ford Focus.
17 Plaintiff also relied on Ford's reputation as an established and experienced auto manufacturer.
18 Plaintiff further relied on the statements made during the sales process by Ford's agents, and
19 within the marketing brochures provided by Ford.  However, Ford and its authorized agents did not
20 publicly or privately disclose to Plaintiff any information about the Transmission Defect. These
21 omissions were material to Plaintiff's decision to purchase the Vehicle.  Had Ford and/or its
22 authorized agents publicly or privately disclosed the Transmission Defect before Plaintiff
23 purchased the Vehicle, Plaintiff would have been aware of such disclosures, and would not have
24 purchased the Vehicle.

25     73.   On or around March 1, 2012, Plaintiff delivered the Vehicle to Ken Grody Ford, an
26 authorized Ford repair facility, for repair. Plaintiff complained that the Vehicle hesitates at takeoff,
27 and that the transmission rolls back on hills. Ken Grody Ford's repair facility technicians
28 reprogrammed the Transmission Control Module ("TCM") and Powertrain Control Module

1   ("PCM") and performed adaptive learning. The Vehicle was returned to Plaintiff and Ken Grody
2   Ford's service technician represented to Plaintiff that the Vehicle had been repaired and was safe
3   to drive. Plaintiff reasonably relied on this representation by Ken Grody Ford's service technician.
4   All repairs were covered under Ford's written warranty.

5   74.   On or around June 22, 2012, Plaintiff again delivered the Vehicle to Ken Grody Ford for
6   repair, with complaints that the transmission seems to slip and experiences a dead start. Ken Grody
7   Ford's technicians reprogrammed all modules and performed adaptive learning. When the Vehicle
8   was returned to Plaintiff, Ken Grody Ford's service technician represented to Plaintiff that the
9   Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation
10   by the service technician at the authorized Ford repair facility. All repairs were covered under
11   Ford's written warranty.

12   75.   On or around November 24, 2014, Plaintiff once again delivered the Vehicle to Ken
13   Grody Ford for repair.  Plaintiff again complained about the transmission slipping on acceleration,
14   and that the crank fails to start at times.  Ken Grody Ford's repair facility technicians replaced the
15   PCM and TCM, and performed adaptive learning.  The Vehicle was then returned to Plaintiff, and
16   Ken Grody Ford's service technician represented to Plaintiff that the Vehicle had been repaired
17   and was safe to drive. Plaintiff reasonably relied on this representation by the service technician at
18   the authorized Ford repair facility.

19   76.   On or around January 21, 2015, Plaintiff once again delivered the Vehicle to Ken Grody
20   Ford for repair.  Plaintiff again complained about the transmission shuddering on acceleration, that
21   the check engine light is on, and that the engine goes idle or stalls at times.  Ken Grody Ford's
22   repair facility technicians replaced the engine's purge valve assembly.  The Vehicle was then
23   returned to Plaintiff, and Ken Grody Ford's service technician represented to Plaintiff that the
24   Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation
25   by the service technician at the authorized Ford repair facility.

26   77.   On or around November 4, 2015, Plaintiff once again delivered the Vehicle to Ken Grody
27   Ford for repair.  Plaintiff complained about receiving an overt TCM failure warning.  Ken Grody
28   Ford's repair facility technicians reprogrammed the PCM and TCM, and performed clutch

1   adaptive learning.  The Vehicle was then returned to Plaintiff, and Ken Grody Ford's service
2   technician represented to Plaintiff that the Vehicle had been repaired and was safe to drive.
3   Plaintiff reasonably relied on this representation by the service technician at the authorized Ford
4   repair facility.

5   78.   On or around March 30, 2016, Plaintiff once again delivered the Vehicle to Ken Grody
6   Ford for repair.  Plaintiff again complained about the transmission shuddering and shifting hard on
7   acceleration, and that the transmission malfunction light is on.  Ken Grody Ford's repair facility
8   verified Plaintiff's concern but neglected to make any repairs, other than to recommend a clutch.
9   The Vehicle was then returned to Plaintiff, and Ken Grody Ford's service technician represented to
10  Plaintiff that the Vehicle was safe to drive. Plaintiff reasonably relied on this representation by the
11  service technician at the authorized Ford repair facility.

12
                    All Statute of Limitations Periods are Tolled by the Discovery Rule and the
13                                 Doctrine of Fraudulent Concealment

14  79. Ford misrepresented the qualities of the transmission in the Vehicle to Plaintiff at the time
15  of the sale of the vehicle.  Ford also concealed the fact that the transmission was defective.

16  80.   Ford continued to misrepresent its ability to repair the vehicle in conformity with the
17  warranty throughout the warranty period.

18  81.   At all relevant times, Ford was aware of the defects in the PowerShift Transmission.

19  82.   As described in more detail above, as early as 2010, Ford began issuing significant
20  technical service bulletins to its authorized dealers explaining the widespread issues with the
21  PowerShift Transmission.  At no point prior to the sale of the vehicle to Plaintiff or during
22  Plaintiff's ownership of the Vehicle did Ford or an authorized dealer ever inform Plaintiff of the
23  ongoing defect or the fact that Plaintiff's Vehicle was not actually equipped with an automatic
24  transmission.

25  83.   Ford had a duty to disclose the concealed facts alleged above because Ford knew that
26  Plaintiff did not know a material fact and further knew that such facts were not readily accessible
27  to the Plaintiff because Ford actively concealed those facts.

28  ///

84.   Ford had a duty to disclose the concealed facts alleged above because Ford made misrepresentations in its marketing materials and window stickers and through its authorized sales representatives about the quality, characteristics, and safety of the PowerShift Transmission.

85.   Ford had a duty to disclose the concealed facts alleged above because Ford actively concealed material facts in order to induce a false belief.

86.   Ford intended for Plaintiff to rely on those misrepresentations to conceal the fact that the defective PowerShift Transmission could not be repaired.

87.   Prior to the sale of the Vehicle, and at all times thereafter, Defendant therefore failed to disclose the existence of the vehicle's inherent defects to Plaintiff, and Defendant failed to disclose its inability to repair these inherent defects, which prevented the Vehicle from conforming to its applicable warranties.  In effect, after the sale of the Vehicle, Defendant fraudulently concealed from purchasers, including Plaintiff, the fact that the dealers were not properly repairing the defects to the PowerShift Transmission, and knew that the limited work that Ford had authorized its dealerships to perform on those vehicles would not properly repair them.  Ford also continued to conceal the fact that Plaintiff's vehicle was not in fact equipped with an automatic transmission as advertised.

88.   On July 7, 2017, Defendant mailed Plaintiff class notice as a putative class member in the class action, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx). Plaintiff received this notice shortly thereafter. This date was the earliest date that Plaintiff could have had any sort of notice of the facts which give rise to Plaintiff's fraud causes of action. Ford did not disclose any of this information prior to the sale of the vehicle to Plaintiff or at any earlier date during ownership. Accordingly, Plaintiff could not have discovered his claims prior to July 7, 2017. Plaintiff could not, despite reasonable and diligent investigation, have discovered such on an earlier date because of Ford's fraudulent misrepresentations and concealment of the defects in the PowerShift transmission in Plaintiff's vehicle, as previously alleged above. Additionally, the repeated false assurances of Ford and its service dealership agents made to Plaintiff, on which Plaintiff reasonably relied, that Ford had and would repair any problems with the transmission in Plaintiff's vehicle that occurred during the

1    express warranty period and that said problems would not be repeating further delayed Plaintiff's

2    discovery of his claims.   The statute of limitations for each of Plaintiff's claims against Ford was

3    therefore tolled under the delayed discovery rule and the doctrine of fraudulent concealment until

4    Plaintiff could have first discovered on or around July 7, 2017, that Ford had misrepresented the

5    characteristics of the transmission and concealed the known defects during the ownership of the

6    Vehicle.

7        89.    Because Ford failed to disclose these foregoing facts to Plaintiff, all statute of limitations

8    periods with respect to sale of the Vehicle were tolled by the doctrines of fraudulent concealment,

9    the discovery rule, and/or equitable tolling. As alleged herein, Ford wrongfully concealed the fact

10   (1) that the Vehicle was equipped with a manual transmission (the PowerShift Transmission), and

11   (2) that its dealerships were making inadequate repairs that were incapable of addressing the root

12   cause of the Vehicle's malfunctions.

13       90.    Plaintiff did not discover the operative facts that are the basis of the claims alleged herein

14   because the facts were concealed in confidential and privileged documents, which a consumer

15   would not know about and could not obtain.

16       91.    No amount of diligence by Plaintiff could have led to the discovery of these facts because

17   they were kept secret by Ford and, therefore, Plaintiff was not at fault for failing to discover these

18   facts.

19       92.    Plaintiff did not have actual knowledge of facts sufficient to put him on notice.  Plaintiff

20   did not know, nor could have known, about Ford's inability to repair the defects in its PowerShift

21   Transmission because, as alleged above, Ford kept this information highly confidential, and its

22   dealership assured Plaintiff that its repairs were effective.

23   <u>All Statute of Limitations Periods are Tolled by the Tolling Doctrine Established in *American Pipe*</u>

24   <u>*& Construction Co. v. Utah* (1974) 414 U.S. 538 As a Result of the Class Action *Vargas v. Ford*</u>

25   <u>*Motor Company*</u>

26       93.    Plaintiff gave timely notice of Plaintiff's claims against Ford in the present action as

27   putative class members in a class action, *Vargas v. Ford Motor Company*, United States District

28   Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was filed on

-18-

Hughes v. Ford - COMPLAINT

1    September 28, 2012. That action was filed within three years of the date of Plaintiff's discovery of
2    his claims against Ford in the present action, as previously described in detail above.

3       94.   There is no prejudice to Ford in gathering evidence to defend against Plaintiff's
4    individual claims because the class definition in the class action complaint within which Plaintiff
5    were putative class members and the allegations in the class action lawsuit, *Vargas v. Ford Motor*
6    *Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388
7    ABC (FFMx), put Ford on notice of the facts that give rise to Plaintiff's individual action, the
8    witnesses necessary for Ford to defend Plaintiff's individual action, and the causes of action
9    against Ford asserted in Plaintiff's individual action.

10      95.   *Vargas v. Ford Motor Company*, United States District Court, Central District of
11   California, Case No. 2:12-cv-08388 ABC (FFMx) alleged the material facts on behalf of Plaintiff
12   as putative class members as are being alleged by Plaintiff in the present individual action.

13      96.   The facts alleged in *Vargas v. Ford Motor Company*, United States District Court,
14   Central District of California, Case No. 2:12-cv-08388 ABC (FFMx) are substantially similar, if
15   not identical to the facts alleged herein.

16      97.   The allegations in *Vargas v. Ford Motor Company*, United States District Court, Central
17   District of California, Case No. 2:12-cv-08388 ABC (FFMx) are based on the same subject matter
18   and similar evidence as the instant complaint. Those allegations concern the same evidence,
19   memories, and witnesses as the subject matter in the instant complaint.

20      98.   The *Vargas* class action certainly protected the efficiency and economy of litigation
21   because that class action is protecting the rights of thousands of consumers nationwide through a
22   single action. Consumer class actions regarding defective vehicles brought against manufacturers
23   are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

24      99.   The tolling of Plaintiff's individual statute of limitations encourages the protection of
25   efficiency and economy in litigation as promoted by the class action devise, so that putative class
26   members would not find it necessary to seek to intervene or to join individually because of fear the
27   class might never be certified or putative class members may subsequently seek to request
28   exclusion.

1    100. The running of all statute of limitations on each of Plaintiff's claims asserted against Ford

2    in the present action were therefore tolled by *American-Pipe* tolling during the entire pendency of

3    the *Vargas* class action (i.e., from the date on which the *Vargas* class action was filed on

4    September 28, 2012 to the date on which Plaintiff opted out of the *Vargas* class action litigation,

5    on or around August 30, 2017).

6    <u>All Statute of Limitations Periods are Tolled Under California Law by the Doctrine of Equitable</u>

7    <u>Tolling As a Result of the Class Action *Vargas v. Ford Motor Company*</u>

8    101. Plaintiff gave timely notice of Plaintiff's claims against Ford in the present action as

9    putative class members in a class action, *Vargas v. Ford Motor Company*, United States District

10   Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was filed on

11   September 28, 2012. That action was filed within three years of the date of Plaintiff's discovery of

12   his claims against Ford in the present action, as previously described in detail above.

13   102. There is no prejudice to Ford in gathering evidence to defend against Plaintiff's

14   individual claims because the class definition in the class action complaint within which Plaintiff

15   were putative class members and the allegations in the class action lawsuit, *Vargas v. Ford Motor

16   Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388

17   ABC (FFMx), put Ford on notice of the facts that give rise to Plaintiff's individual action, the

18   witnesses necessary for Ford to defend Plaintiff's individual action, and the causes of action

19   against Ford asserted in Plaintiff's individual action.

20   103. *Vargas v. Ford Motor Company*, United States District Court, Central District of

21   California, Case No. 2:12-cv-08388 ABC (FFMx) alleged the material facts on behalf of Plaintiff

22   as putative class members as are being alleged by Plaintiff in the present individual action.

23   104. The facts alleged in *Vargas v. Ford Motor Company*, United States District Court,

24   Central District of California, Case No. 2:12-cv-08388 ABC (FFMx) are substantially similar, if

25   not identical to the facts alleged herein.

26   105. The allegations in *Vargas v. Ford Motor Company*, United States District Court, Central

27   District of California, Case No. 2:12-cv-08388 ABC (FFMx) are based on the same subject matter

28   and similar evidence as the instant complaint. Those allegations concern the same evidence,

-20-

Hughes v. Ford - COMPLAINT

1    memories, and witnesses as the subject matter in the instant complaint.

2    106. The *Vargas* class action certainly protected the efficiency and economy of litigation

3    because that class action is protecting the rights of thousands of consumers nationwide through a

4    single action.  Consumer class actions regarding defective vehicles brought against manufacturers

5    are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

6    107. Plaintiff acted reasonably and in good faith in filing the instant action.  Shortly after

7    discovering Ford's fraudulent behavior, Plaintiff filed the instant action to pursue his individual

8    rights without delay.

9    108. The tolling of Plaintiff's individual statute of limitations encourages the protection of

10   efficiency and economy in litigation as promoted by the class action devise, so that putative class

11   members would not find it necessary to seek to intervene or to join individually because of fear the

12   class might never be certified or putative class members may subsequently seek to request

13   exclusion.

14   109. The running of all statute of limitations on each of Plaintiff's claims asserted against Ford

15   in the present action were therefore tolled by *American-Pipe* tolling during the entire pendency of

16   the *Vargas* class action (i.e., from the date on which the *Vargas* class action was filed on

17   September 28, 2012 to the date on which Plaintiff opted out of the *Vargas* class action litigation,

18   on or around August 30, 2017).

19   **FIRST CAUSE OF ACTION**

20   **Violation of the Song-Beverly Act – Breach of Express Warranty**

21   110. Plaintiff incorporates herein by reference each and every allegation contained in the

22   preceding and succeeding paragraphs as though herein fully restated and re-alleged.

23   111. Express warranties accompanied the sale of the vehicle to Plaintiff by which Ford

24   undertook to preserve or maintain the utility or performance of Plaintiff's vehicle or provide

25   compensation if there was a failure in such utility or performance.

26   112. The vehicle was delivered to Plaintiff with serious defects and nonconformities to

27   warranty and developed other serious defects and nonconformities to warranty including, but not

28   limited to a transmission.

113. Pursuant to the Song-Beverly Consumer Warranty Act (hereinafter the "Act") Civil Code sections 1790 *et seq.* the vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff have used the vehicle primarily for those purposes.

114. Plaintiff is a "buyer" of consumer goods under the Act.

115. Defendant Ford is a "manufacturer" and/or "distributor" under the Act.

116. The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value and/or safety of the vehicle.

117. Plaintiff delivered the vehicle to an authorized Ford repair facility for repair of the nonconformities.

118. Defendant was unable to conform Plaintiff's vehicle to the applicable express warranty after a reasonable number of repair attempts.

119. Notwithstanding Plaintiff's entitlement, Defendant Ford has failed to either promptly replace the new motor vehicle or promptly make restitution in accordance with the Song-Beverly Act.

120. By failure of Defendant to remedy the defects as alleged above, or to issue a refund or replacement, Defendant is in breach of its obligations under the Song-Beverly Act.

121. Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to discovery of the nonconformities.

122. Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendant's failure to comply with their obligations under the Song-Beverly Act.

123. Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

124. Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that Ford, has willfully failed to comply with its responsibilities under the Act.

///

## SECOND CAUSE OF ACTION

### Violation of the Song-Beverly Act – Breach of Implied Warranty

125. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

126. Ford and Ken Grody Ford had reason to know the purpose of the Subject Vehicle at the time of sale of the Subject Vehicle.  The sale of the Subject Vehicle was accompanied by an implied warranty of fitness.

127. The sale of the Subject Vehicle was accompanied by an implied warranty that the Subject Vehicle was merchantable pursuant to Civil Code section 1792.

128. The Subject Vehicle was not of the same quality as those generally acceptable in the trade because it was equipped with a defective transmission.

129. The Subject Vehicle was not fit for the ordinary purpose for which such goods are used because it was equipped with a defective transmission.

130. The Subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with a defective transmission.

131. The Subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with an automated manual transmission rather than the automatic transmission as labeled.

132. Plaintiff is entitled to justifiably revoke acceptance of the Subject Vehicle under Civil Code section 1794, *et seq*; Plaintiff hereby revoke acceptance of the Subject Vehicle.

133. Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code section 1794, *et seq*.

134. Plaintiff is entitled to rescission of the contract pursuant to Civil Code section 1794, *et seq*. and Commercial Code section 2711.

135. Plaintiff is entitled to recover any "cover" damages under Commercial Code sections 2711, 2712, and Civil Code section 1794, *et seq*.

136. Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 *et seq* and Commercial Code sections 2711, 2712, and 2713 *et seq*.

### THIRD CAUSE OF ACTION

#### Fraudulent Inducement – Concealment

#### (Against Ford Only)

137. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

138. Ford and its agents intentionally concealed and failed to disclose facts relating to the Transmission Defects as explained in detail in paragraphs 13-69.

139. Defendant was the only party with knowledge of the Transmission Defects because that knowledge came from internal reports such as pre-release testing data, customer complaints made directly to Defendant, and technical service bulletins. None of this information was available to the public, nor did Defendant publicly or privately disclose any of the information to Plaintiff. Ford had exclusive knowledge of the defect as described in detail in paragraphs 45-52.

140. Ford actively concealed information from the public, preventing Plaintiff from discovering any of the concealed facts as described in detail in paragraphs 53-69.

141. Prior to the date of sale, on the date of sale, and on the date of each of the repair attempts, Defendant had an opportunity to disclose to Plaintiff, but instead concealed from and failed to disclose to Plaintiff, any of the known irreparable issues with the Vehicle.

142. Ford intended to deceive Plaintiff by concealing the known issues with the PowerShift Transmission, including the Transmission Defect, in an effort to sell the Vehicle at a maximum price.

143. Ford knew of the specific transmission issues affecting the Vehicle, including the Transmission Defect, prior to the sale of the Vehicle. For example, in 2010, Ford released a TSB after months of research relating to "concerns such as no engage or intermittent no engage in Drive or Reverse when shifting from Park to Drive or Reverse" for certain vehicles equipped with the PowerShift Transmission. Plaintiff's vehicle was sold after Ford acknowledged these problems in a TSB without any sort of disclosure being made to the Plaintiff. When Plaintiff experienced repeated problems with the shifting of the transmission in the Vehicle, and at each time Plaintiff

///

-24-

1  brought the Vehicle to Ford's authorized repair facility for evaluation and repair, Ford and its
2  agents continued to conceal the known Transmission Defect and repeatedly represented to Plaintiff
3  that it was able to fix the issue.

4      144. Plaintiff did not know about the Transmission Defects at the time of sale.  Plaintiff also
5  did not know of the irreparable nature of the problems at the time of any of the repair attempts
6  because Ford and its agents repeatedly represented that it was able to fix the vehicle upon return of
7  the Vehicle to Plaintiff.

8      145. Had Ford and/or its agents publicly or privately disclosed the Transmission Defect to
9  Plaintiff at or prior to the sale, Plaintiff would not have purchased the Vehicle. .

10     146. Plaintiff was harmed by Defendant's concealment of the Transmission Defect because
11 Plaintiff was induced to enter into the sale of a vehicle that Plaintiff would not have otherwise
12 purchased.

13     147. Defendant's concealment of the defects was a substantial factor in causing Plaintiff's
14 harm.

15                    **FOURTH CAUSE OF ACTION**
16              **Fraudulent Inducement – Intentional Misrepresentation**
17                        **(Against Ford Only)**

18     148. Plaintiff incorporates herein by reference each and every allegation contained in the
19 preceding and succeeding paragraphs as though herein fully restated and re-alleged.

20     149. Ford drafted, produced, and distributed marketing brochures to the public containing
21 factual representations about the PowerShift Transmission.  Ford's marketing brochure for the
22 Vehicle represented the PowerShift Transmission had the following qualities:

23          a. "With the available PowerShift 6-speed transmission in Focus, you get the
24             performance of a manual. From an automatic. It delivers seamless gear changes for
25             amazing responsiveness. Most of all, it gives you all that while only sipping a
26             gallon of gas for every 40 highway miles."

27     150. Unfortunately, the Vehicle as delivered to Plaintiff had extremely poor handling on all
28 roads, as Plaintiff's drive was repeatedly interrupted by jerky shifts and hesitation.  Plaintiff's

1  Vehicle was also not equipped with an "automatic" transmission, contrary to Ford's suggestion
2  that the transmission is a traditional "automatic." Plaintiff's Vehicle in fact contained an unproven
3  automated dual clutch manual transmission. Plaintiff's Vehicle did not have seamless gear
4  changes – it experienced jerky gear changes and hesitation between shifts, which necessitated
5  several repairs and repeated reprogramming of the transmission control module – none of which
6  were sufficient to resolve the Transmission Defect.

7      151. Ford made such representations regarding PowerShift Transmission in the 2012 Ford
8  Focus despite its extensive internal knowledge of the Transmission Defect and other problems.
9  Ford's knowledge of the Transmission Defect is laid out in detail in paragraphs 45-52.

10      152. Ford informed its dealers and authorized service facilities and personnel, about common
11  behavior characteristics of the PowerShift Transmission in July 2011. In a memo with instructions
12  sent to Ford dealers and authorized service personnel, Ford noted that some of the common
13  characteristics of the PowerShift Transmission include double clicking metal sounds, coast down
14  whine, low speed grinding, and reverse gear whine. Despite this admission by Ford to its dealers,
15  repair facilities, and agents, Ford continued to represent to the public that the PowerShift
16  Transmission offered "great handling on all roads," and "the performance of a manual," and
17  seamless gear changes for amazing responsiveness," a wildly different picture from the reality.
18  Ford made the statements in its marketing brochures recklessly and without regard for their truth.

19      153. In addition, Ford misrepresented the type of transmission equipped in the Vehicle.
20  Throughout its marketing brochure, Ford states that the vehicle is equipped with a 6-speed
21  automatic transmission. That representation is false. The vehicle is actually equipped with the
22  Ford PowerShift Transmission, which is in fact a dual clutch transmission, which operates using
23  direct mechanical engagement and disengagement similar to a manual transmission. This
24  information is material for a consumer to know in making a purchasing decision, because unlike a
25  traditional automatic transmission, Ford's PowerShift dual clutch transmission powers the drive
26  wheels through a clutch, rather than a torque converter. The use of a clutch can result in a
27  substantially jerkier ride than that produced using a torque converter, particularly in an unproven
28  ///

1  design.    Plaintiff would not have purchased the Vehicle had Plaintiff known the vehicle's
2  transmission technology would cause the

3  drive to be jerky, unreliable, and dangerous as a result of the unproven dual-clutch (rather than
4  automatic) system.

5      154. Defendant intended that Plaintiff rely on the representations made in the marketing
6  brochure related to the transmission in inducing Plaintiff to purchase the Vehicle.

7      155. Plaintiff reasonably relied on Defendant's representations related to the transmission
8  being "automatic" and providing a smooth ride, because Ford was the manufacturer of the vehicle
9  and claimed to have performed and relied upon extensive pre-release testing of the PowerShift
10 Transmission.  Ford was in a superior position of knowledge.

11     156. Plaintiff was harmed by purchasing a vehicle that Plaintiff would not have purchased had
12 they known the true facts about the transmission, and the Transmission Defects, affecting it.

13     157. Plaintiff's reliance on Defendant's representations about the transmission qualities was a
14 substantial factor in Plaintiff's harm, as Ford and its agents were the exclusive source of
15 information about the qualities of the transmission.

16                        **FIFTH CAUSE OF ACTION**

17            **Fraudulent Inducement – Negligent Misrepresentation**

18                          **(Against Ford Only)**

19     158. Plaintiff incorporates herein by reference each and every allegation contained in the
20 preceding and succeeding paragraphs as though herein fully restated and re-alleged.

21     159. At the time Ford made the misrepresentations identified in paragraph 13-69 above, they
22 had no reasonable grounds for believing the representations to be true, because Ford was
23 simultaneously issuing internal memoranda to its agents and dealerships about the characteristics
24 of the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle
25 response while driving."  None of those characteristics can be reasonably construed to provide
26 "great handling on all roads," "seamless gear changes," or "amazing responsiveness," as the
27 PowerShift Transmission was described to the Plaintiff in marketing materials.  Ford's knowledge
28 of the Transmission Defect is outlined in more detail in paragraphs 45-52.

## SIXTH CAUSE OF ACTION

### Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.)

### (Against Ford Only)

160. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged herein.

161. Subject Vehicle is a "good" as defined in Civil Code, section 1761, subdivision (a).

162. Ford is subject to the Consumer Legal Remedies Act, Civil Code, section 1750 et seq., as Ford is a "person" as defined in Civil Code, section 1761, subdivision (c).

163. Plaintiff is a "Consumer" as defined in Civil Code, section 1761, subdivision (d).

164. The Vehicle Code, section 11713, *et seq.*, regulates the advertising and sale of motor vehicles.

165. In violation of the foregoing statutes, Ford has engaged or attempted to engage in the following unfair methods of competition and unfair or deceptive acts or practices, and these methods, acts, or practices were undertaken in a transaction intended to result or which resulted in the sale of goods or services to a consumer.

166. Plaintiff relied on Ford's representations in purchasing the vehicle.

167. The foregoing wrongful acts violate the following subdivisions of the CLRA: (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (9) Advertising goods or services with intent not to sell them as advertised; (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. (Civ. Code, § 1770, subd. (a).)

168. Ford has violated the Consumers Legal Remedies Act (CLRA), California Civil Code sections 1770(a) (5), (7), (9), (14), and (16), by engaging in unfair methods of competition and

-28-

1  unfair and deceptive acts and practices in connection with transactions that were intended to result
2  and did result in the sale and lease of goods to consumers.

3      169. In connection with the sale of the Subject Vehicle to Plaintiff, Ford failed to disclose, at
4  the point of sale or otherwise, material information about the Subject Vehicle —namely, that the
5  Subject Vehicle is equipped with a defective transmission. Plaintiff reasonably expected that Ford
6  would not sell or lease vehicles with known safety defects, such as the transmission defect, and
7  that Ford would disclose such defects to its consumers as it learns of them.

8      170. Ford further represented to Plaintiff, through marketing material and otherwise, that the
9  Subject Vehicle was equipped with an automatic transmission, when Subject Vehicle was in fact
10 equipped with a manual transmission.

11     171. As a direct and proximate result of Ford's conduct, Plaintiff has been harmed in that
12 Plaintiff purchased a vehicle he otherwise would not have, paid more for the Subject Vehicle than
13 he otherwise would, and is left with a vehicle of diminished value and utility because of the defect.
14 Meanwhile, Ford has sold more vehicles equipped with a PowerShift Transmission than it
15 otherwise could have, unjustly enriching itself thereby.

16     172. Ford and its authorized dealership represented to Plaintiff that by entering into the Retail
17 Installment Sales Contract to purchase the Vehicle, Plaintiff was securing the benefit of a warranty
18 by Ford to maintain the utility and performance of the vehicle, or to provide compensation in the
19 event of a failure in utility or performance.  Ford was aware of its intentional scheme to defraud
20 consumers, such as Plaintiff, and its inability to repair the vehicle to conform to the specifications
21 in advertisements and the warranty.

22     173. Pursuant to the Consumer Legal Remedies Act, Civil Code, section 1750 *et seq.*, on
23 12/13/17, Plaintiff notified Ford in writing by certified mail, return receipt requested, of the alleged
24 violations and demanded that Ford correct, repair, replace, or otherwise rectify the violations.

25     174. If Ford fails to offer a compliant correction in 30 days, Plaintiff will amend the instant
26 complaint to seek actual damages and punitive damages pursuant to statute.

27     175. In committing the above wrongful acts, Ford was guilty of oppression, fraud, or malice,
28 because the acts were perpetrated pursuant to Ford's plan, scheme, or company policy to deceive,

1  defraud, mislead, or take unfair advantage of buyers of Ford's vehicles equipped with the
2  PowerShift Transmission.

3      176. The foregoing fraudulent and wrongful acts by Ford, as alleged above, were authorized
4  and ratified by Ford's officers, directions, and/or mangers, including, but not limited to, Ford's
5  director of marketing.  Ford's agents or employees also committed the wrongful acts set forth
6  above with the foregoing knowledge, authorization, approval, direction, or ratification of an
7  officer, director, or managing agent of Ford pursuant to an implicit or explicit company plan,
8  scheme, or policy regarding the advertising and sale of Ford vehicles equipped with the defeat
9  transmission.  Alternatively, the aforementioned wrongful acts were committed by an officer,
10  director, or managing agent of Ford.

11      177. As a direct result of Ford's acts and/or omissions, Plaintiff has been injured as set forth
12  herein.

13      178. Plaintiff seeks the entry of a preliminary and permanent injunction requiring Ford to
14  disclose fully, prior to the sale, the inherent transmission defects in vehicles equipped with the
15  PowerShift Transmission and the defects buyers can expect to experience with these vehicles, and
16  to desist from selling these vehicles without the foregoing pre-sale disclosure. Also, Plaintiff seeks
17  an injunction issued to prevent Ford from refusing to acknowledge its scheme to intentionally
18  defraud consumers, including Plaintiff.

19      179. Injunctive relief is necessary in this case because (1) the legal remedies are inadequate
20  and (2) the state has inherent power to halt deceptive conduct.  Without injunctive relief, Ford will
21  continue to victimize California buyers of Ford vehicles equipped with the PowerShift
22  Transmission.  The repetition of Ford's deceptive sales policies will result in irreparable harm.
23  Without injunctive relief, Ford can simply offer damages to the deceived customers who use it in
24  order to continue their deceptive practices.  Additionally, injunctive relief is specifically authorized
25  by the Consumers Legal Remedies Act to eradicate unfair and deceptive business practices.

26      180. The foregoing injunction is sought to protect the public from these predatory methods,
27  acts, or practices.

28      181. Plaintiff also seeks attorney fees and costs.

1                                **PRAYER FOR RELIEF**

2    WHEREFORE, Plaintiff prays for judgment against Ford, as follows:

3       a.   For general, special and actual damages according to proof at trial;

4       b.   For rescission of the purchase contract and restitution of all monies expended;

5       c.   For diminution in value;

6       d.   For incidental and consequential damages according to proof at trial;

7       e.   For civil penalty in the amount of two times Plaintiff's actual damages;

8       f.   For prejudgment interest at the legal rate;

9       g.   For injunctive and equitable relief;

10     h.   For punitive damages pursuant to Civil Code §3294;

11     i.   For reasonable attorney fees and costs of suit; and

12     j.   For such other relief as the Court deems just and proper under the circumstances.

13    Dated: 12\16\17                      KNIGHT LAW GROUP, LLP

14

15

16                                           STEVE MIKHOV (SBN 224676)

17                                           Attorneys for Plaintiff,

18                                           FRANK CECIL HUGHES

19        Plaintiff FRANK CECIL HUGHES hereby demands trial by jury in this action.

20

21

22

23

24

25

26

27

28

Hughes v. Ford - COMPLAINT

# EXHIBIT 1

Dealer Number _____   Contract Number __311632__   R.O.S. Number __25997316__   Stock Number __35512__

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| Frank Cecil Hughes 3511 Milford Pl Carlsbad, CA 92010 County San Diego | N/A | Ken Grody Ford P. O. Box 1576 Carlsbad, CA 92018 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor – Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

| New-Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2012 | Ford FOCUS | 106 | 1FAHP3N21 CL279414 | ☒ personal, family or household ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 26,030.98 |
|---|---|---|---|---|
| 0.00 % | $ 0.00 (e) | $ -1,509.00 | $ -1,580.00 (e) | $ 24,530.98 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| N/A  Payments | N/A | Monthly, Beginning  N/A |
| 1.  Payments | -1500.00 | Monthly, Beginning  02/04/2012 |
| One Final Payment | 0.00 | 02/04/2012 |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

## ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| 1. Total Cash Price | | |
|---|---|---|
| A. Cash Price of Motor Vehicle and Accessories | $ 22,477.00 (A) | |
| 1. Cash Price Vehicle | $ 22,477.00 | |
| 2. Cash Price Accessories | $ N/A | |
| 3. Other (Nontaxable) | | |
| Describe _____ N/A | $ N/A | |
| Describe _____ N/A | $ N/A | |
| B. Document Preparation Fee (not a governmental fee) | $ 55.00 (B) | |
| C. Smog Fee Paid to Seller | $ N/A (C) | |
| D. (Optional) Theft Deterrent Device (to whom paid) ___ N/A | $ N/A (D) | |
| E. (Optional) Theft Deterrent Device (to whom paid) ___ N/A | $ N/A (E) | |
| F. (Optional) Theft Deterrent Device (to whom paid) ___ N/A | $ N/A (F) | |
| G. (Optional) Surface Protection Product (to whom paid) ___ N/A | $ N/A (G) | |
| H. (Optional) Surface Protection Product (to whom paid) ___ N/A | $ N/A (H) | |
| I. Sales Tax (on taxable items in A through H) | $ 1,746.23 (I) | |
| J. Optional DMV Electronic Filing Fee | $ N/A (J) | |
| K. (Optional) Service Contract (to whom paid) ___ N/A | $ N/A (K) | |
| L. (Optional) Service Contract (to whom paid) ___ N/A | $ N/A (L) | |
| M. (Optional) Service Contract (to whom paid) ___ N/A | $ N/A (M) | |
| N. (Optional) Service Contract (to whom paid) ___ N/A | $ N/A (N) | |
| O. (Optional) Service Contract (to whom paid) ___ N/A | $ N/A (O) | |
| P. Prior Credit or Lease Balance paid by Seller to ___ N/A | $ N/A (P) | |
| (see downpayment and trade-in calculation) | | |
| Q. (Optional) Gap Contract (to whom paid) ___ N/A | $ N/A (Q) | |

## STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

### Vehicle Insurance

| | | Term | Premium |
|---|---|---|---|
| $ N/A | Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A | Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury | $ N/A  Limits | N/A Mos. | $ N/A |
| Property Damage | $ N/A  Limits | N/A Mos. | $ N/A |
| Medical | N/A | N/A Mos. | $ N/A |
| N/A | | N/A Mos. | $ N/A |

Total Vehicle Insurance Premiums $ N/A

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X _____
Seller X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application for Optional Credit Insurance

☐ Credit Life  ☐ Buyer  ☐ Co-Buyer  ☐ Both.
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | | $ N/A |
| Credit Disability | N/A Mos. | | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A (Q) |

Insurance Company Name ___ N/A
Home Office Address ___ N/A ___ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that (1) You are not eligible for insurance if you have reached your 66th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective

M. (Optional) Service Contract (to whom paid) _____ N/A (K)    $ _____ N/A (K)
N. (Optional) Service Contract (to whom paid) _____ N/A _____    $ _____ N/A (M)
O. (Optional) Service Contract (to whom paid) _____ N/A _____    $ _____ N/A (O)
P. Prior Credit or Lease Balance paid by Seller to
_____ N/A _____    $ _____ N/A (P)
(see downpayment and trade-in calculation)
Q. (Optional) Gap Contract (to whom paid) _____ N/A _____    $ _____ N/A (Q)
R. (Optional) Used Vehicle Contract Cancellation Option Agreement    $ _____ N/A (R)
S. Other (to whom paid) _____ N/A _____    $ _____ N/A (S)
For _____ N/A _____
Total Cash Price (A through S)    $ 24,278.23 (1)

2. Amounts Paid to Public Officials
A. License Fees    Estimated    $ 148.00 (A)
B. Registration/Transfer/Titling Fees    $ 98.00 (B)
C. California Tire Fees    $ 6.75 (C)
D. Other _____ N/A _____    $ 0.00 (D)
Total Official Fees (A through D)    $ 252.75 (2)

3. Amount Paid to Insurance Companies
(Total premiums from Statement of Insurance column a + b)    $ _____ N/A (3)
4. ☐ Smog Certification or ☐ Exemption Fee Paid to State    $ _____ N/A (4)
5. Subtotal (1 through 4)    $ 24,530.98 (5)
6. Total Downpayment
A. Agreed Trade-In Value Yr 2009 _____ Make Honda _____    $ 23,805.93 (A)
Model Odyssey _____ Odom 34518 _____
VIN 5FNRL38879B012384
B. Less Prior Credit or Lease Balance    $ 0.00 (B)
C. Net Trade-In (A less B) (indicate if a negative number)    $ 23,805.93 (C)
D. Deferred Downpayment    $ _____ N/A (D)
E. Manufacturer's Rebate    $ 2,225.05 (E)
F. Other _____ N/A _____    $ _____ N/A (F)
G. Cash    $ _____ N/A (G)
Total Downpayment (C through G)    $ 26,030.98 (6)
(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1P above)
7. Amount Financed (5 less 6)    $ -1,500.00 (7)

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.
Proceeds of Loan From _____ N/A _____
Amount $ _____ N/A _____ Finance Charge $ _____ N/A _____
Total $ _____ N/A _____ Payable in _____ N/A _____
Installments of $ _____ N/A _____ $ _____ N/A _____
from this Loan is shown in item 5G.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable:
_____ N/A _____

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back applies. The Seller's right to cancel if Seller is unable to assign this contract to a financial institution will apply.
Buyer X _____
X _____ N/A _____
Co-Buyer

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____, Year _____ N/A. SELLER'S INITIALS _____ N/A

payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.
You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

N/A  X _____ N/A _____    N/A
Date    Buyer Signature    Age
N/A  X _____ N/A _____    N/A
Date    Co-Buyer Signature    Age

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1Q of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term _____ N/A _____ Mos. _____ N/A _____
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____ N/A _____

**OPTIONAL SERVICE CONTRACT(S).** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in items 1K, 1L, 1M, 1N, and/or 1O.

1K Company _____ N/A _____
Term _____ N/A _____ Mos. or _____ N/A _____ Miles
1L Company _____ N/A _____
Term _____ N/A _____ Mos. or _____ N/A _____ Miles
1M Company _____ N/A _____
Term _____ N/A _____ Mos. or _____ N/A _____ Miles
1N Company _____ N/A _____
Term _____ N/A _____ Mos. or _____ N/A _____ Miles
1O Company _____ N/A _____
Term _____ N/A _____ Mos. or _____ N/A _____ Miles
Buyer X _____ N/A _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and both you and we must sign it. No oral changes are binding.
Buyer Signs X _____
Co-Buyer Signs X _____ N/A

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
Seller X _____    X _____    NA

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled

YOUR PRESENT POLICY MAY NOT/OTHER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS YOU OTHERWISE HAVE FULL COVERAGE, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED OR SOLD.

N/A

Buyer Signature X _____    Co-Buyer Signature X _____

N/A

**Notice to buyer:** (1) DO NOT sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

N/A

Buyer Signature X _____    Co-Buyer Signature X _____

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____    Date 02/04/2012    Co-Buyer Signature X _____    Date N/A

N/A

Other Owner Signature X _____

Seller Signs    **Ken Grody Ford**    By X _____    Date 02/04/2012    The Finance _____

**ORIGINAL LIENHOLDER**

LAW

# EXHIBIT B

COPY

SPENCER P. HUGRET (SBN 240424)
shugret@grsm.com
ROBERT C. RODRIGUEZ (SBN 224254)
rrodriguez@grsm.com
GORDON REES SCULLY MANSUKHANI LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

FEB 15 '18 PM 3:42

Attorneys for Defendants
FORD MOTOR COMPANY and
VINCE DIXON FORD, INC., dba
KEN GRODY FORD CARLSBAD

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

BY FAX

FRANK CECIL HUGHES,

Plaintiff,

vs.

FORD MOTOR COMPANY, a Delaware Corporation; VINCE DIXON FORD, INC., a California Corporation, dba KEN GRODY FORD CARLSBAD; and DOES 1 through 10, inclusive,

Defendants.

Case No. 37-2017-00049189-CU-BC-CTL
Unlimited Jurisdiction

**DEFENDANT FORD MOTOR COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Action Filed: December 19, 2017

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Defendant FORD MOTOR COMPANY ("Ford"), for itself alone and for no other parties, hereby answers Plaintiff FRANK CECIL HUGHES' ("Plaintiff") Complaint ("Complaint") as follows:

Under the provisions of Code of Civil Procedure section 431.30, Ford denies, generally and specifically, each, every and all of the allegations contained therein, and denies that Plaintiff has or will sustain damages in the sum or sums alleged, or in any other sum or sums, or at all.

Further answering the Complaint, and the whole thereof, including each and every cause of action contained therein, Ford denies that Plaintiff has or will sustain any injury, damage or loss, if any, by reason of any act or omission, fault or negligence on the part of Ford, their agents,

1  servants and employees, or any of them.

2  ## SEPARATE AFFIRMATIVE DEFENSES

3  For further and separate answer to the Complaint and by way of affirmative defense, Ford

4  alleges as follows:

5  ### FIRST AFFIRMATIVE DEFENSE

6  ### (Failure to State Cause of Action)

7  1.  Plaintiff's Complaint, and each and every cause of action alleged therein, fails to

8  state facts sufficient to constitute a cause of action against Ford and Ford denies that Plaintiff

9  was damaged in any sum or sums, or at all.

10  ### SECOND AFFIRMATIVE DEFENSE

11  ### (Statute of Limitations)

12  2.  Ford is informed and believes, and on that basis alleges, that some or all of

13  Plaintiff's claims may be barred by the statute of limitations, including but not limited to

14  limitations contained within Commercial Code section 2725, Code of Civil Procedure sections

15  338 and 340, and Civil Code section 1783.

16  ### THIRD AFFIRMATIVE DEFENSE

17  ### (Estoppel)

18  3.  Plaintiff is estopped from obtaining the relief sought, or pursing any of the claims

19  raised or causes of actions contained in the Complaint, by virtue of his acts, failures to act,

20  conduct, representations, admissions, and the like.

21  ### FOURTH AFFIRMATIVE DEFENSE

22  ### (Waiver)

23  4.  Plaintiff has waived his rights to the claims, causes of action and relief sought in

24  this Complaint against Ford, by virtue of his acts, failures to act, conduct, representations,

25  admissions, and the like.

26  ///

27  ///

28  ///

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## FIFTH AFFIRMATIVE DEFENSE

### (Laches)

5.      Plaintiff has unreasonably delayed the commencement of this action to the prejudice of Ford.  Therefore the Complaint, and each and every cause of action alleged therein is barred, in whole or in part, by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Economic Loss Rule)

6.      Plaintiff's causes of action have not accrued because Plaintiff cannot establish that he suffered injury directly from the subject vehicle or products, and therefore Plaintiff's contention that the subject vehicle or products failed to adequately perform their functions are barred by the economic loss rule.

## SEVENTH AFFIRMATIVE DEFENSE

### (Vehicle Fit for Intended Purpose)

7.      Ford is informed and believes, and on that basis alleges, that the subject vehicle was fit for providing transportation at all relevant times hereto.  Accordingly, Plaintiff is not entitled to relief for breach of the implied warranty of merchantability. *American Suzuki Motor Corporation v. Superior Court* (1995) 37 Cal.App.4th 1291.

## EIGHTH AFFIRMATIVE DEFENSE

### (Duration of Implied Warranty)

8.      Ford is informed and believes, and on that basis alleges, that some or all of the alleged defects did not arise until more than three months had elapsed since the subject vehicle was sold to Plaintiff.  Accordingly, Plaintiff is not entitled to relief for such concerns under the breach of the implied warranty of merchantability.  Civil Code section 1795.5.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Maintenance and Other Exclusions)

9.      Ford is informed and believes, and on that basis alleges, that Plaintiff and/or others may have improperly cared for and maintained the subject vehicle, and that some of Plaintiff's concerns may have been proximately caused by such lack of maintenance of the

1  subject vehicle or products. Ford reserves the right to identify additional exclusions which may

2  be applicable.

3  **TENTH AFFIRMATIVE DEFENSE**

4  **(Unreasonable or Unauthorized Use of Vehicle)**

5        10.    Ford is informed and believes, and on that basis alleges, that some of Plaintiff's

6  concerns may be barred by Plaintiff's unreasonable or unauthorized use of the vehicle. Civil

7  Code section 1794.3.

8  **ELEVENTH AFFIRMATIVE DEFENSE**

9  **(No Timely Revocation of Acceptance)**

10        11.    Plaintiff has no restitution remedy under breach of implied warranty because there

11  was no timely revocation of acceptance before a substantial change in the condition of the goods.

12  **TWELFTH AFFIRMATIVE DEFENSE**

13  **(No Reasonable Number of Attempts to Repair Afforded)**

14        12.    The Complaint and, each and every cause of action therein, does not state facts

15  sufficient to meet the statutory presumption of a reasonable number of repair attempts under the

16  terms of the Civil Code section 1793.22(b).

17  **THIRTEENTH AFFIRMATIVE DEFENSE**

18  **(Preemption)**

19        13.    The Complaint and, each and every cause of action therein, in whole, or in part,

20  are preempted by the Federal National Traffic and Motor Vehicle Safety Act pursuant to 49

21  U.S.C. sections 30118 et seq.

22  **FOURTEENTH AFFIRMATIVE DEFENSE**

23  **(Performance)**

24        14.    Prior to the commencement of this action, Ford fully performed, satisfied and

25  discharged all duties and obligations it may have owed to Plaintiff arising out of any and all

26  agreements, representations or contracts made by it or on its behalf and this action is therefore

27  barred by the provisions of Civil Code section 1473.

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Abide by Terms of Warranty)

15.     Claims by Plaintiff of breach of warranty are barred because of Plaintiff's failure to give timely and appropriate notice of any claim of breach of warranty.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure to Use Third-Party Dispute Resolution)

16.     Ford makes available a qualified third-party dispute resolution process, and therefore, it is entitled to relief under certain provisions of the Song-Beverly Consumer Warranty Act.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

17.     Plaintiff is barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Good Faith Evaluation)

18.     At all times, Ford's evaluation of Plaintiff's repurchase request has been in good faith, consequently, Plaintiff has no claim for civil penalty for any alleged willful violation.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Improper CLRA Notice)

19.     Ford is informed and believes, and on that basis alleges, that Plaintiff failed to comply with the notice requirements to assert a cause of action for violation of the Consumer Legal Remedies Act.  Civil Code section 1782(a); *Outboard Marine Corporation v. Superior Court* (1975) 52 Cal.App.3d 30.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Doctrine of Equitable Abstention)

20.     Plaintiff's claims for injunctive relief are barred by the doctrine of equitable abstention.

1

## TWENTY-FIRST AFFIRMATIVE DEFENSE

2

### (Failure to Notify)

3          21.     Ford is informed and believes, and on that basis alleges, that Plaintiff has failed to

4    provide timely notice, within a reasonable period of time after discovery of his claims and

5    alleged defects. As a result, Ford has been damaged and prejudiced. Therefore the Complaint

6    and each cause of action therein, is barred as a matter of law.

7

## TWENTY-SECOND AFFIRMATIVE DEFENSE

8

### (Complete Performance)

9          22.     Ford has appropriately, completely and fully performed and discharged any and

10    all obligations and legal duties arising out of the matters alleged in the Complaint.

11

## TWENTY-THIRD AFFIRMATIVE DEFENSE

12

### (Compliance with Laws)

13          23.     Ford has complied with all laws and regulations with regard to the subject matter

14    of Plaintiff's Complaint, and is therefore not liable to Plaintiff for any damages they may have

15    sustained, if any.

16

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

17

### (Good Faith)

18          24.     At all times relevant and material to this action, Ford acted reasonably and in

19    good faith.

20

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

21

### (Independent Causes)

22          25.     The alleged injuries, damages or loss, if any, for which Plaintiff seeks recovery,

23    were the result of causes independent of any purported acts or omissions on the part of Ford, or

24    any of their agents, representatives or employees, thereby eliminating or reducing the alleged

25    liability of Ford.

26          ///

27          ///

28          ///

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

6

DEFENDANT FORD MOTOR COMPANY'S ANSWER TO COMPLAINT

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Inspect)**

26.    Ford alleges that Plaintiff's damages, if any, may have been caused by the failure of third parties, unrelated to Ford, to properly inspect the subject vehicle or products, thereby eliminating or reducing the alleged liability of Ford.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to Maintain)**

27.    Ford alleges that any and all conditions in the subject vehicle or products described in the Complaint, if any there were, were solely a result of the failure to properly maintain and service the subject vehicle or products, thereby eliminating or reducing the alleged liability of Ford.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(No Breach)**

28.    Ford alleges that it did not breach any duties to Plaintiff, thereby barring and/or precluding Plaintiff from recovery.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(No Affirmative Conduct)**

29.    Ford alleges that there was no affirmative conduct on the part of Ford, which allegedly caused or contributed to Plaintiff's alleged injuries and therefore Plaintiff has no cause of action against Ford.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(No Substantial Factor)**

30.    Ford alleges that the negligence and other legal fault alleged in the Complaint as against Ford, if any, was not a substantial factor in bringing about Plaintiff's alleged injuries and, therefore, was not a contributing cause.

///

///

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

DEFENDANT FORD MOTOR COMPANY'S ANSWER TO COMPLAINT

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Excessive/Speculative Damages)

31.    Ford alleges that the damages allegedly sustained by Plaintiff, if any, were excessive, exaggerated, unreasonable, speculative, inflated or otherwise unnecessary and/or unrelated to the alleged incident.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

32.    If Plaintiff has suffered any loss, damage or injury, it was directly or proximately caused by and is the result of Plaintiff's conduct and/or his potential failure to mitigate any such loss, damage or injury.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Disclaimer of Incidental and Consequential Damages)

33.    Ford is informed and believes, and on that basis alleges, that by the terms of the limited warranty for the subject vehicle at issue, Ford is not liable for incidental or consequential damages.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (No Civil Penalty)

34.    Ford is informed and believes, and on that basis alleges, that Plaintiff is barred from the recovery of a civil penalty by reason of Plaintiff's failure to serve written notice pursuant to Civil Code section 1794(e)(3).

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Constitutionality of Punitive Damages)

35.    The claims of Plaintiff are in contravention of Ford's rights under applicable clauses of the United States and California Constitutions, including without limitation the following provisions: (a) said claims constitute an impermissible burden on interstate commerce in contravention of Article I, Section 8 of the United States Constitution; (b) said claims contravene the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; (c) said claims violate Ford's right to Due Process under the Fourteenth

8

1  Amendment of the United States Constitution; (d) said claims contravene the constitutional

2  prohibition against vague and overbroad laws; and (e) said claims contravene the Due Process

3  Clause of the California Constitution.

<p align="center">THIRTY-SIXTH AFFIRMATIVE DEFENSE</p>

<p align="center">(Punitive Damages Improperly Pled/Not Recoverable)</p>

6  36.    Ford is informed and believes, and on that basis alleges, that Plaintiff has not

7  properly pled a claim for punitive damages and these damages are not recoverable based on the

8  facts contained in Plaintiff's Complaint, or are otherwise barred by the provisions of California

9  Civil Code sections 3294, 3295, and 3296, or such conduct was adopted, ratified or authorized

10  by Ford under California Civil Code section 3294(b).

<p align="center">THIRTY-SEVENTH AFFIRMATIVE DEFENSE</p>

<p align="center">(Punitive Damages Impermissible For Extra-Territorial Conduct)</p>

13  37.    Any award of punitive damages based on anything other than Ford's conduct in

14  connection with the design, manufacture, and sale of the subject vehicle or products that are the

15  subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the

16  United States Constitution because any other judgment for punitive damages in this case cannot

17  protect Ford against impermissible multiple punishment for the same wrong and against

18  punishment for extra-territorial conduct.

<p align="center">THIRTY-EIGHTH AFFIRMATIVE DEFENSE</p>

<p align="center">(Punitive Damages Unconstitutional)</p>

21  38.    Ford is informed and believes, and on that basis alleges, that an award of punitive

22  or exemplary damages to Plaintiff would violate Ford's constitutional rights under the provisions

23  of the United States and California Constitutions, including but not limited to the Due Process

24  Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I,

25  Section 7 of the California Constitution because, among other things, (1) any award of punitive

26  or exemplary damages would be grossly out of proportion to the alleged wrongful conduct and

27  purported injury at issue here; (2) there is no legitimate state interest in punishing the alleged

28  wrongful conduct at issue here, or in deterring its possible repetition; (3) the alleged wrongful

<p align="left">Gordon & Rees LLP<br/>275 Battery Street, Suite 2000<br/>San Francisco, CA 94111</p>

<p align="center">9</p>

1   conduct at issue here is lawful in other jurisdictions; (4) the alleged wrongful conduct at issue

2   here is not sufficiently reprehensible to warrant the imposition of any punitive or exemplary

3   damages; and (5) the criteria for the imposition of punitive or exemplary damage are

4   unconstitutionally vague and uncertain and fail to provide fair notice of what conduct will result

5   in the imposition of such damages.

6   <div align="center">**THIRTY-NINTH AFFIRMATIVE DEFENSE**</div>

7   <div align="center">**(Punitive Damages -- If Any -- Must Be Limited)**</div>

8        39.     Ford specifically incorporates by reference, as if fully set forth herein, any and all

9   standards or limitations regarding the determination and enforceability of punitive damages

10   awards as set forth in *State Farm Mutual Automobile Insurance Company v. Campbell* (2003)

11   123 S.Ct. 1513, and *BMW of North America v. Gore* (1996) 116 S. Ct. 1589.

12   <div align="center">**FORTIETH AFFIRMATIVE DEFENSE**</div>

13   <div align="center">**(Set Off)**</div>

14        40.     Ford alleges that if it is established that Ford is in any manner legally responsible

15   for any of the damages claimed by Plaintiff, which is denied, Ford is entitled to a set off of these

16   damages, if any, that resulted from the wrongful acts of Plaintiff and/or others.

17   <div align="center">**FORTY-FIRST AFFIRMATIVE DEFENSE**</div>

18   <div align="center">**(Spoliation of Evidence)**</div>

19        41.     The subject vehicle or products identified in the Complaint that were allegedly

20   designed, manufactured and distributed by Ford are missing, have been modified or altered

21   and/or are no longer available for Ford's possession, which impacts Ford's defense in this

22   case. Ford is therefore entitled to relief from this spoliation, including appropriate jury

23   instructions, admonitions and any other relief afforded by the Court.

24   <div align="center">**FORTY-SECOND AFFIRMATIVE DEFENSE**</div>

25   <div align="center">**(Fees and Costs)**</div>

26        42.     Ford is informed and believes, and on that basis alleges, that the Complaint was

27   brought without reasonable cause and without a good faith belief that there was a justifiable

28   controversy under the facts or the law which warranted the filing of the Comnplaint against Ford.

<div align="left">Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111</div>

<div align="center">10</div>

1  Plaintiff should therefore be responsible for all of Ford's necessary and reasonable attorney's

2  fees and defense costs as permitted by California law.

3  ### FORTY-THIRD AFFIRMATIVE DEFENSE

4  #### (Additional Affirmative Defenses)

5      43.     Ford reserves its rights to raise and plead additional defenses and/or affirmative

6  defenses which might become known during the course of discovery, as well as to dismiss any

7  defenses which, as a result of discovery, are determined to be unsupported by good faith reliance

8  upon either the facts or the law, or a nonfrivolous argument for the extension, modification, or

9  reversal of existing law or the establishment of new law.

10  ### PRAYER

11      WHEREFORE, Ford prays for the following relief:

12      1.     That Plaintiff take nothing by reason of his Complaint, and that this action be

13  dismissed in its entirety with prejudice;

14      2.     That judgment be entered in favor of Ford, on all causes of action;

15      3.     That Ford recover its costs of suit incurred herein as well as attorneys' fees to the

16  extent permitted by law; and

17      4.     That Ford be awarded such other and further relief as the Court may deem just

18  and proper.

19

20  Dated:  February 15, 2018

                        GORDON REES SCULLY MANSUKHANI LLP

21

22                          By: _____

23                             Spencer P. Hugret
                           Robert C. Rodriguez

24                             Attorneys for Defendants
                           FORD MOTOR COMPANY and

25                             VINCE DIXON FORD, INC., dba
                           KEN GRODY FORD CARLSBAD

26

27

28

*Left margin:*
Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## DEMAND FOR JURY TRIAL

Defendant FORD MOTOR COMPANY hereby demands a jury trial as to all issues, claims, and causes of action for which a jury trial is allowed.

Dated:   February 15, 2018

GORDON REES SCULLY MANSUKHANI LLP

By: _____
Spencer P. Hugret
Robert C. Rodriguez
Attorneys for Defendants
FORD MOTOR COMPANY and
VINCE DIXON FORD, INC., dba
KEN GRODY FORD CARLSBAD

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

12

DEFENDANT FORD MOTOR COMPANY'S ANSWER TO COMPLAINT

**PROOF OF SERVICE** FEB 15 '18 PM 3:43

*Frack Cecil Hughes v. Ford Motor Company, et al.*
*San Diego County Superior Court Case No. 37-2017-00049189-CU-BC-CTL*

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On the below-mentioned date, I served the within documents:

### DEFENDANT FORD MOTOR COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at , addressed as set forth below.

☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

Steve Mikhov, Esq.
Lauren Ungs, Esq.
**KNIGHT LAW GROUP, LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067-2325
Tel: (310) 552-2250
Fax: (310) 552-7973
Email: marko@omlawllp.com
Email: laurenu@omlawllp.com
ldudhudlmullduludddlludddldldududdul
*Attorneys for Plaintiff*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 15, 2018at San Francisco, California.

Kimberly Greene

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1149912/36782061v 1

PROOF OF SERVICE

# EXHIBIT C

1  SPENCER P. HUGRET (SBN 240424)
   shugret@grsm.com
2  ROBERT C. RODRIGUEZ (SBN 224254)
   rrodriguez@grsm.com
3  GORDON REES SCULLY MANSUKHANI LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA 94111
5  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
6
7  Attorneys for Defendants
   FORD MOTOR COMPANY and
   VINCE DIXON FORD, INC., dba
8  KEN GRODY FORD CARLSBAD
9

FEB 15 '18 PM 3:42

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA
11                       FOR THE COUNTY OF SAN DIEGO

12  FRANK CECIL HUGHES,                )   Case No. 37-2017-00049189-CU-BC-CTL
                                       )   Unlimited Jurisdiction
13             Plaintiff,              )
                                       )
14       vs.                           )   **DEFENDANT VINCE DIXON FORD,**
                                       )   **INC., dba KEN GRODY FORD**
15  FORD MOTOR COMPANY, a Delaware     )   **CARLSBAD'S ANSWER TO**
    Corporation; VINCE DIXON FORD, INC., a )  **PLAINTIFF'S COMPLAINT**
16  California Corporation, dba KEN GRODY )
    FORD CARLSBAD; and DOES 1 through 10, )
17  inclusive,                         )
                                       )   Action Filed: December 19, 2017
18             Defendants.             )
                                       )

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

19
20          Defendant VINCE DIXON FORD, INC. dba KEN GRODY FORD CARLSBAD ("Ken

21  Grody"), for itself alone and for no other parties, hereby answers Plaintiff FRANK CECIL

22  HUGHES' ("Plaintiff") Complaint ("Complaint") as follows:

23          Under the provisions of Code of Civil Procedure section 431.30, Ken Grody denies,

24  generally and specifically, each, every and all of the allegations contained therein, and denies

25  that Plaintiff has or will sustain damages in the sum or sums alleged, or in any other sum or

26  sums, or at all.

27          Further answering the Complaint, and the whole thereof, including each and every cause

28  of action contained therein, Ken Grody denies that Plaintiff has or will sustain any injury,

                                              1
    DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO
                            PLAINTIFF'S COMPLAINT

1  damage or loss, if any, by reason of any act or omission, fault or negligence on the part of Ken

2  Grody, their agents, servants and employees, or any of them.

3  ### SEPARATE AFFIRMATIVE DEFENSES

4    For further and separate answer to the Complaint and by way of affirmative defense, Ken

5  Grody alleges as follows:

6  ### FIRST AFFIRMATIVE DEFENSE

7  **(Failure to State Cause of Action)**

8    1. Plaintiff's Complaint, and each and every cause of action alleged therein, fails to

9  state facts sufficient to constitute a cause of action against Ken Grody and Ken Grody denies that

10 Plaintiff was damaged in any sum or sums, or at all.

11 ### SECOND AFFIRMATIVE DEFENSE

12 **(Statute of Limitations)**

13   2. Ken Grody is informed and believes, and on that basis alleges, that some or all of

14 Plaintiff's claims may be barred by the statute of limitations, including but not limited to

15 limitations contained within Commercial Code section 2725, Code of Civil Procedure sections

16 338 and 340, and Civil Code section 1783.

17 ### THIRD AFFIRMATIVE DEFENSE

18 **(Estoppel)**

19   3. Plaintiff is estopped from obtaining the relief sought, or pursing any of the claims

20 raised or causes of actions contained in the Complaint, by virtue of his acts, failures to act,

21 conduct, representations, admissions, and the like.

22 ### FOURTH AFFIRMATIVE DEFENSE

23 **(Waiver)**

24   4. Plaintiff has waived his rights to the claims, causes of action and relief sought in

25 this Complaint against Ken Grody, by virtue of his acts, failures to act, conduct, representations,

26 admissions, and the like.

27 ///

28 ///

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

2

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### FIFTH AFFIRMATIVE DEFENSE

#### (Laches)

5.    Plaintiff has unreasonably delayed the commencement of this action to the prejudice of Ken Grody.  Therefore the Complaint, and each and every cause of action alleged therein is barred, in whole or in part, by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

#### (Economic Loss Rule)

6.    Plaintiff's causes of action have not accrued because Plaintiff cannot establish that he suffered injury directly from the subject vehicle or products, and therefore Plaintiff's contention that the subject vehicle or products failed to adequately perform their functions are barred by the economic loss rule.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Vehicle Fit for Intended Purpose)

7.    Ken Grody is informed and believes, and on that basis alleges, that the subject vehicle was fit for providing transportation at all relevant times hereto.  Accordingly, Plaintiff is not entitled to relief for breach of the implied warranty of merchantability.  *American Suzuki Motor Corporation v. Superior Court* (1995) 37 Cal.App.4th 1291.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Duration of Implied Warranty)

8.    Ken Grody is informed and believes, and on that basis alleges, that some or all of the alleged defects did not arise until more than three months had elapsed since the subject vehicle was sold to Plaintiff.  Accordingly, Plaintiff is not entitled to relief for such concerns under the breach of the implied warranty of merchantability.  Civil Code section 1795.5.

### NINTH AFFIRMATIVE DEFENSE

#### (Lack of Maintenance and Other Exclusions)

9.    Ken Grody is informed and believes, and on that basis alleges, that Plaintiff and/or others may have improperly cared for and maintained the subject vehicle, and that some of Plaintiff's concerns may have been proximately caused by such lack of maintenance of the

3

DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO
PLAINTIFF'S COMPLAINT

subject vehicle or products.  Ken Grody reserves the right to identify additional exclusions which may be applicable.

### TENTH AFFIRMATIVE DEFENSE

### (Unreasonable or Unauthorized Use of Vehicle)

10.     Ken Grody is informed and believes, and on that basis alleges, that some of Plaintiff's concerns may be barred by Plaintiff's unreasonable or unauthorized use of the vehicle. Civil Code section 1794.3.

### ELEVENTH AFFIRMATIVE DEFENSE

### (No Timely Revocation of Acceptance)

11.     Plaintiff has no restitution remedy under breach of implied warranty because there was no timely revocation of acceptance before a substantial change in the condition of the goods.

### TWELFTH AFFIRMATIVE DEFENSE

### (No Reasonable Number of Attempts to Repair AfKen Grodyed)

12.     The Complaint and, each and every cause of action therein, does not state facts sufficient to meet the statutory presumption of a reasonable number of repair attempts under the terms of the Civil Code section 1793.22(b).

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Preemption)

13.     The Complaint and, each and every cause of action therein, in whole, or in part, are preempted by the Federal National Traffic and Motor Vehicle Safety Act pursuant to 49 U.S.C. sections 30118 et seq.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Performance)

14.     Prior to the commencement of this action, Ken Grody fully performed, satisfied and discharged all duties and obligations it may have owed to Plaintiff arising out of any and all agreements, representations or contracts made by it or on its behalf and this action is therefore barred by the provisions of Civil Code section 1473.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO PLAINTIFF'S COMPLAINT

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Abide by Terms of Warranty)

15.    Claims by Plaintiff of breach of warranty are barred because of Plaintiff's failure to give timely and appropriate notice of any claim of breach of warranty.

### SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure to Use Third-Party Dispute Resolution)

16.    Ken Grody makes available a qualified third-party dispute resolution process, and therefore, it is entitled to relief under certain provisions of the Song-Beverly Consumer Warranty Act.

### SEVENTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

17.    Plaintiff is barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

### EIGHTEENTH AFFIRMATIVE DEFENSE

### (Good Faith Evaluation)

18.    At all times, Ken Grody's evaluation of Plaintiff's repurchase request has been in good faith, consequently, Plaintiff has no claim for civil penalty for any alleged willful violation.

### NINETEENTH AFFIRMATIVE DEFENSE

### (Improper CLRA Notice)

19.    Ken Grody is informed and believes, and on that basis alleges, that Plaintiff failed to comply with the notice requirements to assert a cause of action for violation of the Consumer Legal Remedies Act.  Civil Code section 1782(a); *Outboard Marine Corporation v. Superior Court* (1975) 52 Cal.App.3d 30.

### TWENTIETH AFFIRMATIVE DEFENSE

### (Doctrine of Equitable Abstention)

20.    Plaintiff's claims for injunctive relief are barred by the doctrine of equitable abstention.

DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO PLAINTIFF'S COMPLAINT

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Failure to Notify)

21.     Ken Grody is informed and believes, and on that basis alleges, that Plaintiff has failed to provide timely notice, within a reasonable period of time after discovery of his claims and alleged defects.  As a result, Ken Grody has been damaged and prejudiced.  Therefore the Complaint and each cause of action therein, is barred as a matter of law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Complete Performance)

22.     Ken Grody has appropriately, completely and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Compliance with Laws)

23.     Ken Grody has complied with all laws and regulations with regard to the subject matter of Plaintiff's Complaint, and is therefore not liable to Plaintiff for any damages they may have sustained, if any.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Good Faith)

24.     At all times relevant and material to this action, Ken Grody acted reasonably and in good faith.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Independent Causes)

25.     The alleged injuries, damages or loss, if any, for which Plaintiff seeks recovery, were the result of causes independent of any purported acts or omissions on the part of Ken Grody, or any of their agents, representatives or employees, thereby eliminating or reducing the alleged liability of Ken Grody.

///

///

///

DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO PLAINTIFF'S COMPLAINT

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Failure to Inspect)

26.     Ken Grody alleges that Plaintiff's damages, if any, may have been caused by the failure of third parties, unrelated to Ken Grody, to properly inspect the subject vehicle or products, thereby eliminating or reducing the alleged liability of Ken Grody.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Maintain)

27.     Ken Grody alleges that any and all conditions in the subject vehicle or products described in the Complaint, if any there were, were solely a result of the failure to properly maintain and service the subject vehicle or products, thereby eliminating or reducing the alleged liability of Ken Grody.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (No Breach)

28.     Ken Grody alleges that it did not breach any duties to Plaintiff, thereby barring and/or precluding Plaintiff from recovery.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (No Affirmative Conduct)

29.     Ken Grody alleges that there was no affirmative conduct on the part of Ken Grody, which allegedly caused or contributed to Plaintiff's alleged injuries and therefore Plaintiff has no cause of action against Ken Grody.

## THIRTIETH AFFIRMATIVE DEFENSE

### (No Substantial Factor)

30.     Ken Grody alleges that the negligence and other legal fault alleged in the Complaint as against Ken Grody, if any, was not a substantial factor in bringing about Plaintiff's alleged injuries and, therefore, was not a contributing cause.

///

///

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO PLAINTIFF'S COMPLAINT

### THIRTY-FIRST AFFIRMATIVE DEFENSE

#### (Excessive/Speculative Damages)

31.    Ken Grody alleges that the damages allegedly sustained by Plaintiff, if any, were excessive, exaggerated, unreasonable, speculative, inflated or otherwise unnecessary and/or unrelated to the alleged incident.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

32.    If Plaintiff has suffered any loss, damage or injury, it was directly or proximately caused by and is the result of Plaintiff's conduct and/or his potential failure to mitigate any such loss, damage or injury.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

#### (Disclaimer of Incidental and Consequential Damages)

33.    Ken Grody is informed and believes, and on that basis alleges, that by the terms of the limited warranty for the subject vehicle at issue, Ken Grody is not liable for incidental or consequential damages.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

#### (No Civil Penalty)

34.    Ken Grody is informed and believes, and on that basis alleges, that Plaintiff is barred from the recovery of a civil penalty by reason of Plaintiff's failure to serve written notice pursuant to Civil Code section 1794(e)(3).

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

#### (Constitutionality of Punitive Damages)

35.    The claims of Plaintiff are in contravention of Ken Grody's rights under applicable clauses of the United States and California Constitutions, including without limitation the following provisions:  (a) said claims constitute an impermissible burden on interstate commerce in contravention of Article I, Section 8 of the United States Constitution; (b) said claims contravene the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; (c) said claims violate Ken Grody's right to Due Process under the Fourteenth

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

8

1  Amendment of the United States Constitution; (d) said claims contravene the constitutional

2  prohibition against vague and overbroad laws; and (e) said claims contravene the Due Process

3  Clause of the California Constitution.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Punitive Damages Improperly Pled/Not Recoverable)

6      36.    Ken Grody is informed and believes, and on that basis alleges, that Plaintiff has

7  not properly pled a claim for punitive damages and these damages are not recoverable based on

8  the facts contained in Plaintiff's Complaint, or are otherwise barred by the provisions of

9  California Civil Code sections 3294, 3295, and 3296, or such conduct was adopted, ratified or

10  authorized by Ken Grody under California Civil Code section 3294(b).

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Punitive Damages Impermissible For Extra-Territorial Conduct)

13      37.    Any award of punitive damages based on anything other than Ken Grody's

14  conduct in connection with the design, manufacture, and sale of the subject vehicle or products

15  that are the subject of this lawsuit would violate the due process clause of the Fourteenth

16  Amendment to the United States Constitution because any other judgment for punitive damages

17  in this case cannot protect Ken Grody against impermissible multiple punishment for the same

18  wrong and against punishment for extra-territorial conduct.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Punitive Damages Unconstitutional)

21      38.    Ken Grody is informed and believes, and on that basis alleges, that an award of

22  punitive or exemplary damages to Plaintiff would violate Ken Grody's constitutional rights

23  under the provisions of the United States and California Constitutions, including but not limited

24  to the Due Process Clause of the Fifth and Fourteenth Amendments to the United States

25  Constitution and Article I, Section 7 of the California Constitution because, among other things,

26  (1) any award of punitive or exemplary damages would be grossly out of proportion to the

27  alleged wrongful conduct and purported injury at issue here; (2) there is no legitimate state

28  interest in punishing the alleged wrongful conduct at issue here, or in deterring its possible

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

9

1    repetition; (3) the alleged wrongful conduct at issue here is lawful in other jurisdictions; (4) the

2    alleged wrongful conduct at issue here is not sufficiently reprehensible to warrant the imposition

3    of any punitive or exemplary damages; and (5) the criteria for the imposition of punitive or

4    exemplary damage are unconstitutionally vague and uncertain and fail to provide fair notice of

5    what conduct will result in the imposition of such damages.

6    <div align="center">**THIRTY-NINTH AFFIRMATIVE DEFENSE**</div>

7    <div align="center">**(Punitive Damages -- If Any -- Must Be Limited)**</div>

8    39.    Ken Grody specifically incorporates by reference, as if fully set forth herein, any

9    and all standards or limitations regarding the determination and enforceability of punitive

10    damages awards as set forth in *State Farm Mutual Automobile Insurance Company v. Campbell*

11    (2003) 123 S.Ct. 1513, and *BMW of North America v. Gore* (1996) 116 S. Ct. 1589.

12    <div align="center">**FORTIETH AFFIRMATIVE DEFENSE**</div>

13    <div align="center">**(Set Off)**</div>

14    40.    Ken Grody alleges that if it is established that Ken Grody is in any manner legally

15    responsible for any of the damages claimed by Plaintiff, which is denied, Ken Grody is entitled

16    to a set off of these damages, if any, that resulted from the wrongful acts of Plaintiff and/or

17    others.

18    <div align="center">**FORTY-FIRST AFFIRMATIVE DEFENSE**</div>

19    <div align="center">**(Spoliation of Evidence)**</div>

20    41.    The subject vehicle or products identified in the Complaint that were allegedly

21    designed, manufactured and distributed by Ken Grody are missing, have been modified or

22    altered and/or are no longer available for Ken Grody's possession, which impacts Ken Grody's

23    defense in this case. Ken Grody is therefore entitled to relief from this spoliation, including

24    appropriate jury instructions, admonitions and any other relief afKen Grodyed by the Court.

25    <div align="center">**FORTY-SECOND AFFIRMATIVE DEFENSE**</div>

26    <div align="center">**(Fees and Costs)**</div>

27    42.    Ken Grody is informed and believes, and on that basis alleges, that the Complaint

28    was brought without reasonable cause and without a good faith belief that there was a justifiable

<div align="left">Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111</div>

<div align="center">10</div>

<div align="center">DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO
PLAINTIFF'S COMPLAINT</div>

1  controversy under the facts or the law which warranted the filing of the Comnplaint against Ken

2  Grody.  Plaintiff should therefore be responsible for all of Ken Grody's necessary and reasonable

3  attorney's fees and defense costs as permitted by California law.

### FORTY-THIRD AFFIRMATIVE DEFENSE

#### (Additional Affirmative Defenses)

6      43.    Ken Grody reserves its rights to raise and plead additional defenses and/or

7  affirmative defenses which might become known during the course of discovery, as well as to

8  dismiss any defenses which, as a result of discovery, are determined to be unsupported by good

9  faith reliance upon either the facts or the law, or a nonfrivolous argument for the extension,

10  modification, or reversal of existing law or the establishment of new law.

### PRAYER

12      WHEREFORE, Ken Grody prays for the following relief:

13      1.    That Plaintiff take nothing by reason of his Complaint, and that this action be

14  dismissed in its entirety with prejudice;

15      2.    That judgment be entered in favor of Ken Grody, on all causes of action;

16      3.    That Ken Grody recover its costs of suit incurred herein as well as attorneys' fees

17  to the extent permitted by law; and

18      4.    That Ken Grody be awarded such other and further relief as the Court may deem

19  just and proper.

21  Dated:  February 15, 2018

    GORDON REES SCULLY MANSUKHANI LLP

    By:

    Spencer P. Hugret
    Robert C. Rodriguez
    Attorneys for Defendants
    FORD MOTOR COMPANY and
    VINCE DIXON FORD, INC., dba
    KEN GRODY FORD CARLSBAD

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

1

2

3

4

5

6

7

8

9

10

11

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Defendant KEN GRODY FORD hereby demands a jury trial as to all issues, claims, and causes of action for which a jury trial is allowed.

Dated:    February 15, 2018

GORDON REES SCULLY MANSUKHANI LLP

By: _____

Spencer P. Hugret
Robert C. Rodriguez
Attorneys for Defendants
FORD MOTOR COMPANY and
VINCE DIXON FORD, INC., dba
KEN GRODY FORD CARLSBAD

12

DEFENDANT VINCE DIXON FORD, INC., DBA KEN GRODY FORD CARLSBAD'S ANSWER TO PLAINTIFF'S COMPLAINT

FEB 15 '18 PM 3:42

## PROOF OF SERVICE
*Frack Cecil Hughes v. Ken Grody Motor Company, et al.*
San Diego County Superior Court Case No. 37-2017-00049189-CU-BC-CTL

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On the below-mentioned date, I served the within documents:

**DEFENDANT VINCE DIXON FORD, INC., dba KEN GRODY FORD CARLSBAD'S ANSWER TO PLAINTIFF'S COMPLAINT**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at , addressed as set forth below.

☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

Steve Mikhov, Esq.
Lauren Ungs, Esq.
**KNIGHT LAW GROUP, LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067-2325
Tel: (310) 552-2250
Fax: (310) 552-7973
Email: marko@omlawllp.com
Email: laurenu@omlawllp.com
*Attorneys for Plaintiff*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 15, 2018 at San Francisco, California.

_____
Kimberly Greene

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1149912/36782226v.1

PROOF OF SERVICE

1

## <u>CERTIFICATE OF SERVICE</u>

2

*CCP §§ 1011, 1013, 1013(a) and 2015.5; CRC 2.306*
*Frank Cecil Hughes v. Ford Motor Company, et al.*
*San Diego County Superior Court Case No. 37-2017-00049189-CU-BC-CTL*
*USDC, Southern District, Case No.*

3

4

5      I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 275 Battery Street, 20th Floor, San Francisco CA 94111.

6

7      On the date set forth below, I served the foregoing document(s) described as:

8    **DEFENDANT FORD MOTOR COMPANY'S NOTICE OF REMOVAL**

9    on the interested parties in this action as follows:

10

| | |
|---|---|
| Steve Mikhov, Esq. <br> Russell Higgins Esq. <br> **KNIGHT LAW GROUP, LLP** <br> 1801 Century Park East, Suite 2300 <br> Los Angeles, CA 90067-2325 <br> Tel: (310) 552-2250 <br> Fax: (310) 552-7973 <br> Email: marko@omlawllp.com <br> Email: laurenu@omlawllp.com | ***Attorneys for Plaintiff*** <br><br> ***FRANK CECIL HUGHES*** |

11

12

13

14

15

16

17

18    ☒    by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

19

20

21    ☒    (Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

22

23

24    Executed on **February 20, 2018**, at San Francisco, California.

25

26        /s/  Spencer P Hugret

27            Spencer P. Hugret

28

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111